No. 12345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE ex rel. UNION OIL CO.
OF CALIFORNIA,

Relator,

-vs-

THE DISTRICT COURT OF THE EIGHTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF CASCADE, and the HONORABLE
PAUL G. HATFIELD, DISTRICT JUDGE,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana.
John Stephenson, Jr. argued, Great Falls, Montana.

For Respondents:

Smith, Emmons and Baillie, Great Falls, Montana.
Robert Emmons argued, Great Falls, Montana.

---

Submitted: August 24, 1972

Decided: SEP 2 6 1972

Filed: SEP 2 6 1972

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This application by relator for a writ of supervisory control or other appropriate writ arises from the order of the Cascade County District Court, dated August 10, 1972, denying relator's motions to strike and for protective order. Relator seeks to have the district court's order vacated and to have the relief which was sought in the district court granted by this Court.

The record indicates that this application is the result of extensive procedural controversy in the district court between Union Oil Company of California (Union Oil), defendant below and relator herein, and Eugene R. Fluitt and Leonard L. Godak and others, plaintiffs below. That controversy focuses on the production and disclosure of certain legal opinions drafted by relator's attorneys. This Court earlier heard the application of relator in Cause No. 12197 for an order preventing discovery by plaintiffs of those legal opinions, and by per curiam order of January 17, 1972, we denied the previous application by Union Oil.

Because we denied relator's application and dismissed the show cause order in Cause No. 12197, the order of the district court dated November 18, 1971, granting plaintiffs' motion for production of documents, remained intact.

Union Oil then filed a motion for protective order in the district court stating additional reasons why it would be violative of the attorney-client privilege and highly prejudicial to Union Oil if relator were compelled to produce for discovery purposes legal opinions rendered in confidence by relator's "house counsel" in California. Following hearing on this motion the Cascade County district court in its order of February 22, 1972, required Union Oil to turn over these legal opinions to the court for an "in camera" inspection. The court stated it would then rule on which portions of the opinions, if any, would be turned over to plaintiffs' counsel for inspection. One of the specific restrictions of the district court's order is contained in

paragraph 4 thereof:

> "4. Said opinions shall be treated as confidential material and shall not be made a part of the Court record or otherwise disclosed to other persons, subject to such further rulings as the Court may make herein."

Subsequent to the district court's "in camera" review, it entered orders dated May 23, June 1, and June 12, 1972, particularly describing those portions of the legal opinions which plaintiffs' counsel would be permitted to copy. In its May 23, 1972 order the district court expressed the opinion that this Court's January 17, 1972 per curiam ruling rendered the issue of attorney-client privilege "res judicata".

In none of these orders, however, did the district court remove the mandate contained in paragraph 4 of its February 22, 1972 order. The court's order of June 12, 1972 added the further condition "that the use of said opinions by plaintiffs' counsel or by anyone else shall be restricted to this action only and shall not be considered in any other litigation involving Union Oil Company for either evidentiary or discovery purposes."

Union Oil relied upon the protective provisions set forth in the orders of the district court and did not seek review of those orders in this Court.

Then on June 30, 1972, plaintiffs served the document giving rise to this application, their "First Amended Complaint". The amended complaint is a purported class action on behalf of plaintiffs and all other holders of relator's credit cards in the State of Montana who have paid revolving charge account finance charges. The amended complaint alleges that Union Oil has violated the usury laws of the State of Montana in assessing finance charges upon certain revolving charge account balances at a periodic rate of 1½% per month. The crux of the procedural history lies herein: this amended complaint contains approximately 13 pages of quotations and purported quotations from the legal opinions turned over to plaintiffs' attorneys in

- 3 -

accordance with the aforementioned orders of the district court. Certain omissions have been made and emphasis given to parts of the original legal opinions without appropriate notation to so indicate.

Relator then filed its motion to strike the quotation of legal opinions from the amended complaint and to seek a protective order pursuant to Rule 30(b), M.R.Civ.P. Specifically, relator sought a protective order:

> " * * * requiring plaintiffs' counsel to refrain from publicizing the contents of the legal opinions prepared by the staff of Union Oil Company previously turned over to him, except where the publication of the same is shown to be necessary for good cause upon written application to this Court pursuant to notice given to counsel. * * *"

Counsel for Union Oil also obtained an order of the district court requiring the First Amended Complaint to be filed in a sealed envelope with the judge and be kept "in camera" until the defendant Union Oil's motions could be determined. On August 10, 1972, following the submission of briefs and oral argument upon Union Oil's motions, the district court entered its order denying the motions and yet providing that the First Amended Complaint would remain sealed until a determination had been given by this Court upon application by relator. If relator had not so applied here, the district court's order provided for making the amended complaint a matter of public record within ten days following August 10.

Relator's application was filed with this Court on August 18, 1972.

The issue presented by the application is whether the district court committed error in its order of August 10, 1972, denying Union Oil's motions to strike and for protective order.

Because we find upon examination of all the facts now before the Court that the disclosure and indeed original production of the legal opinions here in issue constitutes a violation of the attorney-client privilege, we need not consider herein the argument of relator addressed to whether plaintiffs' amended complaint oversteps the provisions of Rule 8(a) and (e),

- 4 -

M.R.Civ.P., regarding the pleading of a "short and plain statement" which shall be "simple, concise and direct." For the reasons set out below, the attorney-client privilege as enunciated in this state and in other jurisdictions compels us to order the objectionable material stricken from the amended complaint and the protective relief granted. We further note that in the giving of this opinion, recognition of the attorney-client privilege requires that we not allow disclosure of the content of the legal opinions in question.

Before considering the matter of attorney-client privilege, however, we wish to clarify the significance of our January 17, 1972, per curiam ruling in this action. We find that both plaintiffs and the court below have attached undue importance and an almost "stare decisis" interpretation to our denial of relator's earlier application for writ of supervisory control. Such deference is not warranted.

Specifically, the district court stated in its May 23, 1972 order that the issue of "lawyer-client privilege is now res judicata as to the legal opinions". Respondents' reply brief herein states " * * * that argument has been finally and conclusively disposed of by the Supreme Court in its Order dated 17 January 1972". In the first instance, we are not here dealing with a matter of res judicata, which gives conclusive finality to a final, valid judgment; the order of January 17, 1972, raises a question of whether the doctrine "law of the case" is applicable. Law of the case is concerned with establishing rules of law in the case at hand and with getting that particular case to judgment. 1B Moore's Federal Practice, Par. 0.401.

The law of the case doctrine, though, does not apply to our January 17 ruling. This Court discussed the doctrine in O'Brien v. Great Northern R. Co., 148 Mont. 429, 421 P.2d 710, cert. den. 87 S.Ct. 2034, 387 U.S. 920, 18 L.Ed.2d 974, wherein we stated:

> "The application of the doctrine of 'the law of the case'
> is limited to those issues which were actually decided
> and were necessary to the decision. The doctrine does
> not extend so far as to include matter which was con-
> sequential, incidental, or not decided by the court. * * *"
> (Emphasis added.)

Our ruling in Cause No. 12197 was simply a denial of the application and dismissal of the show cause order. No discussion of our grounds and rationale was given nor was one necessary in that this Court may in its discretion deny application for the writ in a manner analogous to that of the United States Supreme Court denying certiorari, and, similar to the effect of a United States Supreme Court denial of certiorari, our denial of the application for a supervisory writ imports no expression of opinion on the merits of the case, nor does such denial by this Court imply anything regarding our view of the merit of the arguments presented.

Thus, whether the production of the documents in question was a breach of the attorney-client privilege in light of the facts as we now know them was not decided by this Court and the law of the case doctrine does not operate in respect to our January 17, 1972 order. See Electrical Research Products v. Gross, 120 F.2d 301 (CCA 9th, 1941). While the immediate effect of the denial of application for the writ was to allow the action of the lower court to stand, in this case to allow the court's order of November 18, 1971, compelling production to remain unchanged, the denial does not endorse the reasoning behind the lower court's order as the law of the case.

At the time of the January 17 order, we saw no harm or prejudice befalling defendant in letting the lower court's order stand so we chose not to intervene at that time. The facts have changed considerably since January 17. We now have before us the affidavits of Messrs. Myron E. Smith, Robert W. Putnam, Samuel O. Pruitt, Jr., and other attorneys relating the circumstances under which the legal counsel to Union Oil rendered the legal opinions. We have ourselves seen these legal opinions. We note the use which plaintiffs now seek to make of the opinions.

What we have to say as respects the attorney-client privilege hereafter is not concerned with communications in furtherance of prospective criminal or

fraudulent acts, nor conspiracies entered into to accomplish such purposes.

Different principles prevail in those instances. See Vol 3 Jones on Evidence,

5th Ed., Sec. 833, p. 1564.

This brings us to an examination of the attorney-client privilege

in Montana. The privilege is well-established in this state. Section 93-

701-4(2), R.C.M. 1947, states:

> "An attorney cannot, without the consent of his client,
> be examined as to any communication made by the client
> to him, or his advice given thereon in the course of
> professional employment." (Emphasis added.)

This Court has applied this section to exclude from evidence legal advice

given by an attorney. See Davis v. Morgan, 19 Mont. 141, 47 P. 793 and

August v. Burns, 79 Mont. 198, 255 P. 737.

It is also well-established in other jurisdictions that the attorney-

client privilege applies to legal opinions prepared for use of a corporation

by its house counsel. In United States v. United Shoe Machinery Corporation,

89 F.Supp. 357 (D. Mass., 1950), the United States sought production of various

correspondence and memoranda in the possession of defendant. Some of the

matter was legal opinions rendered by independent law firms to defendant and

other communications were by defendant's own house counsel. As to the first

group, the court recognized applicability of the attorney-client privilege:

> " * * * And the privilege of nondisclosure is not lost
> merely because relevant nonlegal considerations are
> expressly stated in a communication which also includes
> legal advice. It follows that in so far as these letters
> to or from independent lawyers were prepared to solicit
> or give an opinion on law or legal services, such parts
> of them are privileged as contain, or have opinions based
> on, information furnished by an officer or employee of
> the defendant in confidence and without the presence of
> third persons."

The court also gave attorney-client privilege protection to communications

prepared by house counsel:

> "On the record as it now stands, the apparent factual
> differences between these house counsel and outside
> counsel are that the former are paid annual salaries,

- 7 -

> occupy offices in the corporation's buildings, and are
> employees rather than independent contractors. These
> are not sufficient differences to distinguish the two
> types of counsel for purposes of the attorney-client
> privilege. And this is apparent when attention is paid
> to the realities of modern corporate law practice. The
> type of service performed by house counsel is substan-
> tially like that performed by many members of the large
> urban law firms. The distinction is chiefly that the
> house counsel gives advice to one regular client, the
> outside counsel to several regular clients."

The court upheld the privilege as to those exhibits which met the following

test:

> "(a) the exhibit itself was prepared by or for either
> (1) independent counsel or (2) defendant's general
> counsel or one of his immediate subordinates; and

> "(b) as appears upon the face of the exhibit, the prin-
> cipal purpose for which the exhibit was prepared was to
> solicit or give an opinion on law or legal services or
> assistance in a legal proceeding; and

> "(c) the part of the exhibit sought to be protected
> consists of either (1) information which was secured
> from an officer or employee of defendant and which was
> not disclosed in a public document or before a third
> person, or (2) an opinion based upon such information
> and not intended for disclosure to third persons."

See also Georgia-Pacific Plywood Co. v. United States Ply. Corp., 18 F.R.D. 463

(S.D.N.Y., 1956) and Malco Manufacturing Company v. Elco Corporation, 45 F.R.D.

24 (D. Minn., 1968).

Turning to the application at hand, we note that the legal opinions

involved herein are three legal memoranda prepared by the staff of Union Oil

dated March 20, 1959, April 16, 1968, and January 22, 1971. These were all

prepared by attorneys acting solely in their capacity as such, were addressed

only to members of defendant's management, and were intended to be confidential.

The opinions contain in some situations quoted excerpts from and attachments

of legal opinions rendered to Union Oil by independent law firms in some of

the states where relator does business. The legal opinions were requested by

relator and were rendered by counsel upon the assumption that said opinions

were rendered in confidence and would be immune from discovery by reason of

the attorney-client privilege. Both the excerpts quoted from opinions of

- 8 -

private counsel and the opinions drafted by relator's staff counsel are privileged by reason of the attorney-client privilege.

Respondents suggest that due to certain statements by Union Oil's credit manager, Richard L. Noland, made during his deposition of October 15, 1971, the privilege is waived. Noland testified to the existence of certain documents containing the legal opinions. Certainly, voluntary disclosure of the facts in question, here the content of the legal opinions, may constitute a waiver of the privilege. Wright & Miller, Federal Practice and Procedure: Civil Sect. 2016. Yet Noland's references were only in regard to the existence of the various memoranda, in response to questions seeking a foundation for an attempt to require production. He did not set forth the confidential data. We conclude that relator's privilege was not waived.

This Court has full powers pursuant to Rule 30(b), M.R.Civ.P., to issue its order protecting a party from annoyance, embarrassment or oppression. Rule 34, under which production was had, is expressly made subject to the provisions of Rule 30(b). Disclosure of the quotations and purported quotations of legal opinions contained in the amended complaint would obviously be highly prejudicial and oppressive to relator herein.

Therefore, we conclude that:

1. The order of the district court dated August 10, 1972, is hereby annulled, vacated, and set aside;

2. All of the quotations and purported quotations contained in plaintiffs' First Amended Complaint derived from the legal opinions furnished to plaintiffs' counsel pursuant to order of the district court shall be entirely stricken from said First Amended Complaint before said First Amended Complaint may be placed upon the court records; and

3. Plaintiffs and plaintiffs' counsel are hereby ordered to refrain from publicizing or in any other manner spreading upon the public records the contents of said legal opinions, without first being required to show good

cause therefor to the district court upon notice given to counsel.

Let the writ of supervisory control issue in accordance with the foregoing.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices

- 10 -