No. 81-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

DENNIS KUIPER,

                Relator and Appellant,

    vs.

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT OF THE STATE OF MONTANA
et al.,

                Respondent.

---

ORIGINAL PROCEEDING:

    For Appellant:

        Conner, Baiz and Olson, Great Falls, Montana
        Dennis Conner argued, Great Falls, Montana
        Niewald, Risjord and Waldeck, Kansas City, Missouri

    For Respondent:

        Church, Harris, Johnson and Williams, Great Falls, Montana
        Cresap McCracken argued, Great Falls, Montana
        Dzivi, Conklin & Nybo, Great Falls, Montana
        William Conklin argued, Great Falls, Montana
        Stinson, Mag and Frizzell, Kansas City, Missouri

---

                Submitted: June 10, 1981

                Decided: August 12, 1981

Filed: August 12, 1981

*Thomas J. Kearney*
                    Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Plaintiff, Dennis Kuiper (relator), served requests for admission asking Goodyear to admit the genuineness of documents in the possession of both defendant and relator and sought by deposition to orally examine the defendant's executives. Defendant, Goodyear Tire and Rubber Company (Goodyear), filed a motion seeking a protective order. The District Court granted the protective order, thereby preventing the relator from discovering the documents and compelling the answers.

The relator petitioned for a writ of supervisory control. On April 16, 1981, this Court entered an order accepting the application.

This case results from injuries received by the relator, on August 13, 1979. The relator was handling a truck tire inflated on a Goodyear K-type multi-piece truck rim. The complaint alleges that a side-ring explosively separated from the rim base, fracturing relator's skull. The complaint sets forth a claim in strict liability requiring proof that: (1) The product was in a defective condition and unreasonably dangerous to the user. (2) The defect caused the accident and injuries complained of herein. (3) The defect is traceable to the defendant.

On November 7, 1980, the relator filed a request for admission of genuineness of documents. The contested documents came into the possession of relator's attorney as the result of the documents originally being ordered produced in a similar but unrelated case. Messick v. Goodyear Tire & Rubber Co. (No. 74CV756-W-2 D. Mo.). In that case, the plaintiff had filed a request for production of documents, and after viewing the documents in camera, the federal

-2-

district judge held that the documents were to be produced. After production, that case was settled and dismissed. Thereafter, the documents were widely disseminated. The relator, and many others, have seen the documents since that time.

The relator, in this case, has sought to depose certain of defendant's executives. The questions to which the defendant objected, pertained to the subject documents and to an investigation of the defendant by the National Highway Traffic Safety Administration (NHTSA). That investigation was commenced in 1970 for the purpose of determining why K-type truck rims seemed to cause numerous accidents. The relator seeks to establish that Goodyear attempted, through government influence, to terminate the investigation. The relator alleges that Goodyear "covered up" the defect in a product, which Goodyear knew to be unsafe, and that the relator is entitled to prove such facts to establish a basis for punitive damages.

The relator filed a motion under Rule 37(a), M.R.Civ.P., seeking to compel answers to deposition questions by requiring attendance of the defendant's employees at trial to testify about the disputed matters. The relator's motion was denied, and the District Court has ruled that the relator cannot inquire either about the documents or the investigation.

The following issues are now before this Court:

(1) Whether the District Court erred in determining the contested documents fell within the attorney-client privilege and the protection of the work product rule, thereby foreclosing the use of those documents in this litigation.

(2) Whether the District Court erred in precluding relator from using material, already in his possession, for any purpose.

-3-

(3) Whether the District Court erred in refusing to allow the relator to question Goodyear executives regarding the documents and facts surrounding the investigation.

With respect to the disputed documents, it is important to distinguish between two separate issues. Relator's request for admission of genuineness of documents was filed pursuant to Rule 36(a), M.R.Civ.P., allowing a party to make requests for admission of genuineness of documents covering the truth of any matters within the scope of Rule 26(b), M.R. Civ.P. Therefore, pursuant to Rule 26(b), a party must only admit the genuineness of documents which are not privileged and are discoverable under that rule. A resolution of this issue involves interpretation of attorney-client privilege as defined in section 26-1-803, MCA, and the work product rule governed by Rule 26(b)(3), M.R.Civ.P.

A separate and distinct issue relates to the District Court order forbidding use of the documents. The court order prevents the use of this information, in possession of relator, for any purpose whatsoever. Resolution of this issue involves discussion and application of rights of free speech, under article II, §7, of the Montana Constitution, and the First Amendment of the United States Constitution.

With regard to deposition questions propounded by relator to Goodyear executives, relator seeks to compel the attendance of those witnesses at trial. Though the relief sought is inappropriate, we will treat relator's motion as one to compel answers under Rule 37(a), M.R.Civ.P., and decide whether relator is entitled to have Goodyear's witnesses answer the questions.

We resolve the constitutional issue first. The order of the trial court prevents relator from using the documents

in relator's possession, for extra judicial purposes, as well as in the case at bar. Such an order has a chilling effect upon First Amendment rights and must be subjected to close scrutiny. In re Halkin, (D.C. Cir. 1979), 598 F.2d 176.

In Halkin, the plaintiffs alleged that certain government agencies conducted unlawful surveillance of citizens who opposed the war in Viet Nam. Plaintiffs sought damages and equitable relief for violation of their constitutional rights. During the pendency of the case, plaintiffs, through discovery, obtained certain documents which the government contended would impair United States diplomatic and foreign relations, reveal CIA intelligence sources, and implicate the privacy interests of third persons. Plaintiffs advised the government that they intended to release the information to the news media and, thereafter, defendant moved for a protective order pursuant to Rule 26(c). Defendant argued that public disclosure of the documents would be "prejudicial to the defendants' right to adjudication of the issues" in an unbiased climate and would deny the defendant a fair trial. Plaintiffs responded by contending that the protective order would violate the plaintiffs' First Amendment right. The United States District Court signed the defendant's proposed restraining order and the plaintiffs petitioned the court of appeals for a writ of mandamus, seeking to vacate the District Court order.

Judge Bazelon, writing for the court acknowledged that attorneys have historically been officers of the courts and that they have a legal and ethical responsibility to safe-guard the right to a fair trial. However, Judge Bazelon said:

"... But lawyers' responsibility to protect the fairness of the judicial process does not mean that lawyers and litigants surrender their First Amendment rights at the courthouse door. Even public

officials who have special responsibilities to the court do not necessarily have a 'more severely curtailed' right to freedom of expression than 'the average citizen'."

In Halkin, Judge Bazelon cited with approval, Chase v. Robson (7th Cir. 1970), 435 F.2d 1059, wherein the court held that an order barring counsel and parties from making public statements about the merits of the case, was unconstitutional. The Robson court concluded that the order constituted ". . . a prior restraint on protected First Amendment conduct". 598 F.2d at 187.

The court in Halkin acknowledged that a protective order may not constitute a prior restraint, but determined that the issue of "prior restraint" was not determinative. The court said:

> "We do not believe, however, that the proper resolution of this case in the end turns on whether this order can be termed a prior restraint. We observe the admonition of Justice Frankfurter that the term 'prior restraint' should not be used as 'a talismanic test,' Kingsley Books, Inc. v. Brown, 354 U.S. 436, 441, 77 S.Ct. 1325 (1957), and do not begin our examination with an almost insurmountable presumption against the validity of this order. However, the fact that the order poses many of the dangers of a prior restraint is sufficient to require close scrutiny of its impact on protected First Amendment expression." 598 F.2d at 186.

Noting that the United States Supreme Court had stressed that litigation may be "a vehicle for effective political expression and association, as well as a means of communicating useful information to the public", In re Primus (1978), 436 U.S. 412, 431, 98 S.Ct. 1893, 1904, 56 L.Ed.2d 417, the court stated that ". . .[l]itigation itself is a form of expression protected by the First Amendment". 598 F.2d at 187. The court in Halkin, concluded that a First Amendment right extends to use of discovery materials. 598 F.2d at 187.

Before a trial court can enter a protective order restraining free expression, the court must find that three criteria exist: (1) The harm posed by dissemination must be

substantial and serious. (2) The restraining order must be narrowly drawn and be precise. (3) There must be no alternative means of protecting the public interest which intrudes less directly on expression. Nebraska Press Ass'n v. Stuart (1976), 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683; In re Halkin, supra.

In assessing the propriety of a protective order in each case, the trial court must consider and make necessary findings on each element of the standard. In this case no findings have been made which justify the court order that "counsel for plaintiff are hereby prohibited from making any further use whatsoever of such privileged documents and exhibits in this action." This portion of the court's order unconstitutionally proscribes plaintiff's freedom of expression and must be reversed.

The District Court held that the contested documents, exhibits A-E, and G-M were entitled to protection under attorney-client privilege and work product. The effect of this ruling is to foreclose use of the documents when this matter comes to trial.

Section 26-1-803, MCA, provides:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional employment."

Work product is governed by Rule 26(b)(3), M.R.Civ.P., which provides:

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to

> obtain the substantial equivalent of the mater-
> ials by other means. In ordering discovery of
> such materials when the required showing has
> been made, the court shall protect against
> disclosure of the mental impressions, conclu-
> sions, opinions, or legal theories of an attorney
> or other representative of a party concerning the
> litigation."

Before discussing application of the attorney-client privilege and the work product rule, we must resolve the question of waiver. Relator contends that the documents here in question have been widely disseminated without objection from Goodyear. On the other hand, Goodyear contends that the documents were involuntarily produced pursuant to court order and that under these circumstances a waiver did not occur.

Waiver is the voluntary relinquishment of a known right. Massett v. Anaconda (1981), ___Mont.___, ___P.2d ___, 38 St.Rep. 961. Goodyear's response to court process does not constitute such a waiver. State ex rel. Union Oil Co. of Cal. v. District Court (1972), 160 Mont. 229, 503 P.2d 1008. However, the waiver could subsequently be found should the evidence show that, thereafter, Goodyear voluntarily disseminated the documents in question. A waiver could also be found if dissemination was made by persons not connected with Goodyear. If a sufficiently wide dissemination of the materials was found to have occurred, and Goodyear, knowing of this, took no legal action to protect against dissemination, then the voluntary relinquishment of a right could be found. The record before us is insufficient to make this determination. Upon remand of this matter, the District Court is directed to hold a hearing with respect to evidence bearing upon the waiver question and to make findings accordingly.

The balance of our discussion concerning the attorney-client privilege and the application of the work product

rule, will apply should the trial court find that a waiver has not occurred. If a waiver is found, then the existence of privilege is rendered moot.

The trial court's order dated March 13, 1981, granting a protective order to Goodyear, correctly identifies exhibit A as consisting of reports concerning closed product liability litigation prepared by Goodyear's in-house counsel. However, the order's reference to exhibit B as being a communication between house counsel Rigrish and other Goodyear personnel is inaccurate. Exhibit B is a brief note from a Goodyear employee denominated "Gerb" forwarding excerpts from a deposition taken in another "rim" case. Exhibits D and E are correctly identified as communications between house counsel Rigrish and other Goodyear personnel. The order mistakenly identifies exhibit J as being a communication between in-house lawyer Rigrish and Goodyear's liability carrier; exhibit J is a memorandum from one employee of a liability insurance company to another employee within the same company. Exhibit M is mistakenly identified in the order as a communication between lawyer Rigrish and Goodyear's liability carrier; exhibit M is a letter written by a representative of the Aetna Insurance Company addressed to Rigrish of Goodyear. Exhibits C, H, I, K and L are correctly identified in the order as being communications from Rigrish to liability insurance carriers. Exhibit G is correctly identified as a communication from Rigrish to retained counsel representing Goodyear in similar but unrelated litigation.

The subject matter and author of each exhibit is critical to determining whether attorney-client privilege is applicable. That privilege only applies statutorily in Montana to communications made by a client to his attorney and legal advice given in response thereto, during the course of professional

-9-

employment.  Section 26-1-803, MCA.

Exhibit A is a compilation of case histories prepared by Rigrish for his superior at Goodyear.  Attorney-client privilege does relate to legal advice given by house counsel to the corporate employer.  State ex rel. Union Oil Co. of Cal. v. District Court, supra.

A careful study of each of the case histories contained in exhibit A shows that the contents of the document cannot be accurately characterized as "legal advice".  Rigrish analyzed closed product liability files and reported to his superior the results obtained in each of those files. The files were closed at the time the document was prepared. The report was apparently made by Rigrish for the purpose of allowing his superior to evaluate his work and for the purpose of keeping corporate management advised about the history of product liability litigation.  It is important to note that no legal advice is being given by Rigrish to his superior or corporate management with respect to pending litigation files.  Under these circumstances the attorney-client privilege as statutorily defined in Montana, does not apply to exhibit A.

Exhibit B is correspondence from Goodyear personnel to Rigrish and, though the contents of the note are rather ambiguous, it would seem to be covered by attorney-client privilege.  However, the enclosure appears to be deposition excerpts which would be part of the public record.

Exhibits D and E are letters from Rigrish to other Goodyear personnel.  They appear to cover matters contemplated by the attorney-client privilege.

Exhibits C, H, I, K and L are communications between Rigrish and personnel employed by Goodyear's liability carriers.  Rigrish is not a lawyer for those liability

carriers.  There is no indication that the recipients of the communications are attorneys for Rigrish.  Therefore, the attorney-client privilege does not apply to these documents.

Exhibit G is a communication from Goodyear to retained counsel.  Exhibit G is clearly protected by the privilege. Exhibit J is a document prepared by an employee of the liability insurance company and forwarded to other personnel within the same insurance company.  If any privilege exists, it exists for the benefit of that liability insurance company and would have to be claimed by that company.

Exhibit M is a communication from Aetna Insurance Company to Rigrish.  Rigrish is not an attorney for Aetna Insurance Company and attorney-client privilege is, therefore, inapplicable.

Exhibits A, C, H, I, J, K, L and M are not covered by attorney-client privilege.  Exhibits B, D, E and G may be protected.

The work product rule is broader in its application than the attorney-client privilege, but it is not an absolute privilege.  By its terms the rule governs not only the attorney and his client, but also a party's representative, including his consultant, surety, indemnitor, insurer or agent.  The rule protects materials prepared during litigation or in anticipation of litigation and provides for the disclosure of such material only upon a showing that the party seeking discovery has a substantial need for the material in preparation of the case and is unable, without undue hardship, to obtain the materials through other means. The rule further directs that the court protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.  Rule 26(b)(3), M.R.Civ.P.,

may afford protection to much of the documentary evidence here in dispute.

In applying the work product rule, we must make the following determinations: (1) Does the rule apply where material has been discovered and is in the possession of opposing counsel? (2) Does the rule apply to terminated litigation? (3) Does the rule apply where there is a claim but the reality of litigation may be very speculative?

A literal interpretation of Rule 26(b)(3), M.R.Civ.P., would confine application of the rule to those instances where discovery is sought. Relator does not here seek discovery. Relator has possession of the subject documents and seeks only to lay foundation for those documents. We feel that the work product rule must be given a liberal interpretation in order to effectuate its purpose. The right granted under the rule can be waived and such a waiver will be the subject of the evidentiary hearing hereinbefore ordered. However, we here hold that the work product rule legitimately can form the basis of a protective order even though the "work product" is in the possession of the adverse party.

The question of whether "terminated litigation" is contemplated by the work product rule, was determined in In re Murphy (8th Cir. 1977), 560 F.2d 326. In that case Chief Judge Gibson, writing for the court, said:

> "In view of the Hickman rationale and the policies of Rule 26(b)(3), we conclude that the work product privilege applies to documents prepared in antici-pation of terminated litigation. The primary pur-pose of the work product privilege is to assure that an attorney is not inhibited in his represent-ation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work

product documents merely on request and use them against his client. The work product privilege would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought. What is needed, if we are to remain faithful to the articulated policies of Hickman, is a perpetual protection for work product, one that extends beyond the termination of the litigation for which the documents were prepared. Any less protection would generate the very evils that the Court in Hickman attempted to avoid." 560 F.2d at 326.

There is a division of authority on this question. Cases supporting the opposite view are United States v. International Business Machines Corp., (S.D. N.Y. 1974), 66 F.R.D. 154, 178, and Honeywell, Inc. v. Piper Aircraft Corp., (M.D. Pa. 1970), 50 F.R.D. 117, 119. We feel that the better reasoned rule supports application of the work product rule to terminated litigation.

Rule 26(b) provides that materials prepared in anticipation of litigation can only be produced upon a showing of substantial need and inability to obtain the materials elsewhere. However, that portion of the rule which protects the mental impressions and legal theories of an attorney only refers specifically to "the litigation". Subsection 3 of Rule 26(b), in its last sentence, states: "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." We must determine whether to apply the protection afforded mental impressions of an attorney to those impressions rendered during the investigation of a claim where no litigation is in progress.

In In re Murphy, supra, the government filed motions seeking to discover legal documents and internal memoranda that were prepared by law firms representing several large corporate clients. The law firms' representation of these

clients had existed for many years. The documents consisted of internal memoranda, notes, summaries, outlines and chronologies prepared for use in then current and <u>anticipated</u> litigation. The documents were characterized by counsel as private working papers of trial lawyers that included a type of "devil's advocacy" made in an effort to outline the inferences that might be drawn by a "skilled and imaginative" adversary. These documents were not sent to or shown to the clients. The 8th Circuit Court of Appeals held that such documents were protected by the "mental impressions" provision of the work product rule even though some documents related to anticipated litigation. We agree that such protection should be afforded even though litigation is not in progress. When a claim file is opened, there is always some prospect of litigation and an investigation must be conducted geared to the ultimate eventuality of litigation. Therefore, we feel that work product protection must be afforded from the time the claim file is opened.

Exhibit A was not prepared in anticipation of litigation and only relates to an analysis of closed files. It clearly is not covered by the work product rule.

The balance of the exhibits in question are subject to the protections of Rule 26(b)(3), M.R.Civ.P., but such protection is not absolute. The materials may not be the proper subject of a protective order if relator is able to make a showing that he "has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." However, those portions of the documents which relate to the mental impressions of the author of the document, receive a greater protection. We agree with the following rationale from In re Murphy, supra,

wherein the court said:

"It is clear that opinion work product is entitled to substantially greater protection than ordinary work product. Therefore, unlike ordinary work product, opinion work product cannot be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. See Fed.R.Civ.P. 26(b)(3). In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. See Hickman v. Taylor, supra. Our unwillingness to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations, yet unencountered by this court, where weighty considerations of public policy and a proper administration of justice would militate against the nondiscovery of an attorney's mental impression. Absent such compelling showing, the attorney's opinion work product should remain immune from discovery." (Footnotes omitted.) 560 F.2d at 337.

Upon remand, the trial court will have the burden of applying this law to each of the documents involved in the case. If the trial court finds that there was a waiver, then the application of this rule becomes moot.

In its order, the District Court foreclosed relator from deposing Goodyear executives regarding facts contained in the disputed documents and also from interrogating those witnesses about the National Highway Traffic Safety Administration investigation. The court based its protective order upon "relevancy" and "public policy".

The basis for a witness's refusal to testify is set forth in Rule 26(c), M.R.Civ.P., which provides:

"Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ."

The rule does not provide for refusal on "public policy" grounds. Were this Court to expand the rule and allow for a "public policy" basis for refusal to testify, then, given the facts of this case, such a basis would not foreclose inquiry.

This Court has previously found strong public policy reasons for imposing strict liability in tort. In Brandenburger v. Toyota Motor Sales (1973), 162 Mont. 506, 513 P.2d 268, we said:

> "The essential rationale for imposing the doctrine of strict liability in tort is that such imposition affords the consuming public the maximum protection from dangerous defects in manufactured products by requiring the manufacturer to bear the burden of injuries and losses enhanced by such defects in its products. . ."

The District Court order states that "disclosure in this action of the material and information Goodyear was compelled to submit to the National Highway Traffic Safety Administration investigation would clearly discourage frank and open communications with the government contrary to the strong public policy interests in such an investigation." It should here be noted that Goodyear does not have the option of disclosing to the federal government. Such disclosure is mandated by law. In Barry v. Manglass (1976), 389 N.Y.S.2d 870, 877, the court said:

> "As an additional answer to General Motors' public policy argument (that the admission of such recall letters would discourage manufacturers from announcing a possible defect), it is merely necessary to point out that such announcement was not a voluntary act, but one mandated by Federal statute (see Motor Vehicle Safety Act of 1966, supra)."

This Court has recognized a strong public policy in protecting members of the public from injury by defective products. In Brown v. North American Manufacturing Co. (1977), 176 Mont. 98, 516 P.2d 711, Justice Harrison, writing for the majority, said: "We reject any rule which would operate to encourage misdesign."

We hold that public policy militates in favor of permitting discovery of facts surrounding the "recall campaign" and the investigation by the National Highway Traffic Safety Administration. A complete public awareness of investigations

concerning defective products is in the public interest and should be facilitated. We find this litigation to be a proper forum for such disclosure.

The District Court order granting protection to Goodyear's witnesses, further justified its holding on the basis of "relevancy". Relator here seeks punitive damages and by way of discovery seeks to develop evidence for the purpose of proving malice.

Relator's deposition questions are designed to prove Goodyear knew it had a defective product and attempted to prevent public knowledge of that defect. Such facts would tend to prove malice and are relevant to the issues pleaded.

The District Court order precluding relator from deposing Goodyear witnesses with respect to the National Highway Traffic Safety Administration investigation and the "recall campaign" is reversed. That portion of the order which prevents relator from inquiring about the disputed documents is governed by the law enunciated in this opinion with respect to those documents. If a particular document is not protected by either the attorney-client privilege or the work product rule, then inquiry may be made about that document during the taking of depositions from Goodyear executives. If a document is privileged, such inquiry may not be made.

Accordingly, this matter is remanded to the District Court for proceedings in conformity with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
Justice

-17-

_John Conway Harrison_

_Daniel J Shea_

_John C. Sheehy_

_Gene B Daly_

Justices