Glen BAKER, Conservator of the
Estates of Brenda Baker and
Kelly Baker, Plaintiff,

v.

CNA INSURANCE COMPANY, an Illinois corporation, and Chubb Group, a New Jersey corporation, Defendants.

No. CV–87–069–GF.

United States District Court,
D. Montana,
Great Falls Division.

July 15, 1988.

Neil Ugrin, Ugrin, Alexander, Zadick & Slovak, Great Falls, Mont., for plaintiff.

James Aiken, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., Bradley M. Jones, William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

This action has its genesis in two dental malpractice claims. The defendants, CNA Insurance Company and the Chubb Group (hereinafter collectively referred to as "CNA"), provided liability insurance coverage to the dentist against whom the plaintiff asserted the malpractice claims on behalf of his minor daughters. In the aftermath of a settlement of the underlying claims, the plaintiff instituted this action, challenging the propriety of CNA's handling of those claims. The matter is presently before the court on motion of the plaintiff, Glen Baker, seeking to compel CNA to respond to certain discovery requests. The court addresses each of the disputed areas of discovery accordingly.

### I.

The principal matter in dispute is the discoverability, under the Federal Rules of Civil Procedure, of certain documents generated and maintained by CNA with respect to the malpractice claims advanced by Baker against CNA's insured. CNA resists Baker's attempt to discover the documents at issue upon the ground that those documents are protected from discovery by the attorney-client privilege and/or work product doctrine as encompassed in Fed.R. Civ.P. 26(b)(3).

After extensive briefing and oral argument by counsel for the parties, the documents at issue were produced by CNA, pursuant to court order, for *in camera* inspection. Having inspected the subject documents *in camera*, the court is prepared to rule upon the discoverability of those documents.

■ With the advent of "bad faith" litigation in the context of insurance, this court, in the exercise of the diversity jurisdiction granted it by 28 U.S.C. § 1332, has regularly been called upon to define the limits of protection which the attorney-client privilege and work product doctrine afford an insurance company with respect to the documents contained in a claims file. *See, e.g., In re Bergeson,* 112 F.R.D. 692 (D.Mont.1986); *Silva v. Fire Insurance Exchange,* 112 F.R.D. 699 (D.Mont.1986); *see also, Lane v. All Nation Insurance Company,* CV-86-54-GF (D.Mont. June 17, 1987) [1987 WL 49532]. In this court's opinion, the principles which have evolved concerning the attorney-client privilege and the work product doctrine in the discovery context apply with equal force in "bad faith" litigation as in all other civil litigation. A case by case application of those principles in actions involving claims of unfair claims settlement practices by liability insurers has proven to be somewhat of an arduous task, due to the simple fact that the ultimate determination as to the discoverability of the documents in dispute requires the court to undertake a detailed analysis of each particular document.

The scope of the protection afforded by the attorney-client privilege in the context of the case at bar, is determined by resort to state law. *See,* Fed.R.Evid. 501; Fed.R. Civ.P. 30(c). Montana has codified the attorney-client privilege in Mont.Code Ann. § 26-1-803 (1987) which provides:

An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional employment.

The foregoing statutory privilege represents a codification of the attorney-client privilege, existing in the common law, as it pertained to attempts to compel an attorney to divulge the substance of confidential communications made to him by his client. *See, Piersky v. Hocking,* 88 Mont. 358, 292 P. 725 (1930). This statutory privilege does not represent a codification of the entirety of the attorney-client privilege as recognized at the common law. The privilege, as evolved in the common law, also protected an individual from being compelled to disclose the substance of confidential communications made to an attorney for the purpose of obtaining professional advice. *See, Cedrone v. Unity Savings Association,* 103 F.R.D. 423, 426 (E.D.Penn.1984); *IES v. Superior Court,* 44 Cal.2d 559, 283 P.2d 700 (1955); *Vilardi v. Vilardi,* 200 Misc. 1043, 107 N.Y.S.2d 342 (1951); *Fluty v. State,* 224 Ind. 652, 71 N.E.2d 565 (1947); *Ex parte Martin,* 141 Ohio St. 87, 47 N.E.2d 388 (1943).

The legislature of the State of Montana has chosen to abrogate this latter facet of the attorney-client privilege, having determined that an individual civil litigant called as a witness may be compelled to disclose communications that individual has had with an attorney as they bear upon the litigation at hand. *See,* Mont.Code Ann. § 26–1–803 (1987). In that regard, the legislature has obviously decided that the disclosure of relevant evidence outweighs the importance of preserving a litigant's right to invoke the privilege when called as a witness at trial. The position adopted by the Montana Legislature regarding the propriety of compelling a client to divulge the substance of communications made to an attorney, in confidence, is not universally accepted. *See, e.g.,* CALIFORNIA EVIDENCE CODE, §§ 950 *et seq.;* ARIZONA REVISED STATUTES, § 13–4062(2); 42 PENNSYLVANIA CONS. STAT. ANNOTATED § 5928. Nonetheless, Fed.R.Evid. 501 compels this court to follow the law on privileges as established by the statutory and decisional law of the State of Montana. In that regard, the Montana Supreme Court has specifically held that the attorney-client privilege only applies statutorily in Montana to communications made by a client to his attorney and legal advice given in response thereto, during the course of professional employment. *Kuiper v. District Court of the Eighth Judicial District,* — Mont. —, 632 P.2d 694, 700–01 (1981). The privilege extends to written communications from an attorney to his client. *Id.; see also, Kammerer v. Western Gear Corporation,* 96 Wash.2d 416, 421, 635 P.2d 708, 711 (1981) (*citing, Victor v. Fanning Starkey Company,* 4 Wash. App. 920, 486 P.2d 323 (1971)).

The "work product" doctrine, the principle which recognizes that materials prepared by an attorney in anticipation of litigation should enjoy a qualified protection from discovery, has its origin in the Supreme Court's decision in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The principle enunciated in *Hickman* was eventually incorporated into Fed. R.Civ.P. 26(b)(3). Rule 26(b)(3) protects materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representatives" unless the party seeking discovery has a "substantial need" for the material and is unable, without "undue hardship," to obtain the material through other means. Even where the requisite showing is made, Fed.R.Civ.P. 26(b)(3) further directs the court to protect, against disclosure, the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation at hand, material which is generally referred to as "opinion work product."

The motion to compel *sub judice* calls upon the court to determine the proper application of the attorney-client privilege and work product doctrine in the context of the present case.

The focus of Baker's inquiry is five documents contained within the claims file maintained by CNA which were withheld from discovery. Two of those documents,

and the ones to which the parties' debate is primarily directed, are letters written by an attorney to an employee of CNA involved in the handling of the underlying tort claim. Those documents bear preparation dates of July 2, 1986, and September 22, 1986, respectively. The third document, dated October 20, 1986, is a statement of fees and costs compiled by the same attorney and sent to CNA. The final two documents, bearing dates of October 20, 1986, and March 9, 1987, are internal memorandum generated by employees in regular service with CNA.

### A. *Attorney's Correspondence*

CNA invokes the attorney-client privilege to protect disclosure of the substance of certain correspondence from an attorney, *i.e.*, Mr. Richard E. Gillespie, who CNA contends it retained for purposes of obtaining legal advice regarding its liability for the malpractice claims advanced by Baker against CNA's insured.

Upon review of the two letters which are the principal subject of debate, the court is constrained to conclude that the letters cannot be characterized as anything but legal advice rendered by Gillespie in response to inquiry by CNA regarding the propriety of CNA's position with respect to the malpractice claims advanced by Baker against CNA's insured.[1]

The entire thrust of Baker's argument lies in his assertion that the communications which occurred between Gillespie and CNA were merely communications between Gillespie, as attorney for the insured, and a third party, *i.e.*, CNA. Baker's argument is premised on the postulate that Gillespie could only have represented the insured with respect to the malpractice claim advanced against the insured. Assuming the validity of his postulate, Baker submits that CNA may not assert the attorney-client privilege with respect to documents generated in the underlying controversy between parties and attorneys not involved in the current action. With specific reference to the contested correspondence from Gillespie to CNA, Baker contends that because the correspondence was not between Gillespie and his client, the insured, no claim of privilege can stand. The proposition advanced by Baker stands or falls on the validity of its premise that Gillespie was not retained by CNA for the purpose of obtaining legal advice. The court is unpersuaded by the logic of Baker's argument.

Review of the contested correspondence establishes that in response to CNA's request, Gillespie undertook to render a legal opinion to CNA regarding that entity's liability, under the liability insurance agreement at issue, with respect to the malpractice claims advanced by Baker against CNA's insured. The contested communications are clearly "advice given ... in the course of professional employment." Mont.Code Ann. § 26–1–803 (1987). The court is unpersuaded by Baker's attempt to characterize the relationship between Gillespie and CNA as something other than that of attorney and client. Baker cannot transmute the actual nature of the relationship between Gillespie and CNA by the simple expedient of offering an interpretation of Gillespie's understanding of the relationship which existed among Gillespie, CNA and the insured which suggests that Gillespie represented only the insured.

Review of certain statements made by Gillespie during the course of deposition upon oral examination, in the context of the deposition as a whole, reveals Gillespie's understanding that he was operating in a dual capacity both as attorney for CNA and its insured under the subject liability insurance policy. Baker does not challenge, in general, the propriety of an attorney's dual representational relationship

---

**1.** As noted, CNA also seeks to shield from discovery a billing statement submitted by Gillespie to CNA, summarizing the basis of the attorney's fees and expenses for which Gillespie was charging CNA. While the court is unable to perceive the basis upon which CNA claims that the statement falls within the purview of the attorney-client privilege, it must strain even further to find the basis upon which the information contained in the statement would become admissible at trial. Nonetheless, it suffices to say that the court is unpersuaded by CNA's assertion of the attorney-client privilege to defeat discovery of the statement.

with an insured and his insurer. As CNA accurately notes, in the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured and, consequently, operates on behalf of two clients. Absent the development of a conflict of interest, there is nothing inherently improper or unethical about representing the interests of both the insurer and the insured. *See, American Mutual Liability Insurance Company v. Superior Court*, 38 Cal.App.3d 579, 113 Cal. Rptr. 561 (1974). It is true, as Baker asserts, that even if an insurer is paying the fee of an attorney, the attorney's primary duty is owed to the insured. *See, Gibson v. Western Fire Insurance Company*, 210 Mont. 267, 682 P.2d 725 (1984). One would be hard pressed to quarrel with this principle recognizing the primacy of the relationship between the attorney and the insured given its well-established acceptance in the law. The principle, however, cannot be extrapolated to preclude an insurer from claiming the protection afforded its confidential communications with an attorney retained to protect the interests of both the insurer and the insured with respect to a claim asserted against the insured by a third party.

Baker suggests that the rationale expressed by this court in the case of *Silva v. Fire Insurance Exchange, supra*, dictates that CNA is precluded from invoking the attorney-client privilege to defeat discovery of the entire claims file at issue. The court disagrees.

In *Silva*, this court stated:

> The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.

112 F.R.D. at 700.

*Silva*, as well as this court's decision in *Bergeson v. National Surety Corporation, supra*, upon which *Silva* relies, was a first-party "bad faith" action. A well-established principle regarding discovery in "bad faith" actions prosecuted by an insured against his insurer for tortious failure to settle within the policy limits of a liability policy is that communications between the insurer and an attorney who also represented the insured in the original tort action against the insured are not privileged with respect to the insured. *See, Gibson v. Western Fire Insurance Company*, 210 Mont. 267, 682 P.2d 725 (1984); *see also, Longo v. American Policyholders Insurance Company*, 181 N.J.Super. 87, 436 A.2d 577 (1981); *Simpson v. Motorists Mutual Insurance Company*, 494 F.2d 850 (7th Cir.1974) (applying Ohio law), *cert. denied*, 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974); *Dumas v. State Farm Mutual Auto Insurance Company*, 111 N.H. 43, 274 A.2d 781 (1971); *Shapiro v. Allstate Insurance Company*, 44 F.R.D. 429 (D.C. Penn.1968) (applying Pennsylvania law); *Chitty v. State Farm Mutual Automobile Insurance Company*, 36 F.R.D. 37 (D.C.S. C.1964) (applying South Carolina law). The thread of reasoning common to these cases is that the attorney retained to defend the underlying tort claim, the insurer and the insured are in privity in that counsel represents the interests of both the insurer and the insured. The rationale is legitimately extended to those first-party "bad faith" cases pursued by an insured against his insurer with respect to claims made by the insured under the terms of an insurance contract. *See, Silva v. Fire Insurance Exchange, supra*, at 699; *Brown v. Superior Court In and For Maricopa County*, 137 Ariz. 327, 670 P.2d 725, 734 (1983); *Layton v. Liberty Mutual Fire Insurance Company*, 98 F.R.D. 457 (E.D.Pa.1983) (construing Pennsylvania law). The court finds the reasoning expressed in this line of cases, however, to be inapposite in the context of a third-party "bad faith" claim prosecuted against a liability insurer.

■ As an alternative argument, Baker asserts that CNA has waived any right it may have had to invoke the attorney-client privilege with respect to the communications at issue. Baker predicates his waiver argument upon the fact that Gillespie, prior to being deposed upon oral examination by Baker's counsel, was instructed to review

the correspondence on which this dispute centers. Relying upon Fed.R.Evid. 612, Baker submits that Gillespie's use of the disputed documents to refresh his memory prior to testifying constituted a waiver of any claim of privilege resulting in the disputed documents losing their privileged status. The court disagrees.

Some courts have assumed that any material consulted by a witness prior to testifying loses its privileged status. *See, e.g., Wheeling–Pittsburgh Steel v. Underwriters Laboratories,* 81 F.R.D. 8 (N.D.Ill. 1978); *R.J. Hereley & Son Company v. Stotler & Company,* 87 F.R.D. 358 (N.D. Ill.1980); *Marshall v. United States Postal Service,* 88 F.R.D. 348 (D.C.D.C.1980); *James Julian, Inc. v. Raytheon Company,* 93 F.R.D. 138 (D.Del.1982). Acceptance of an unqualified rule requiring production whenever a privileged document has been used to refresh recollection, however, has not been universal. A leading commentator on the Federal Rules of Evidence criticizes as theoretically unsound, a rule imputing waiver whenever a witness uses a privileged document to refresh his recollection. 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE par. 612[04] (1987). This same commentator suggests the more enlightened approach is to find waiver only when the witness has consulted a writing embodying his own communication to counsel, and his testimony at deposition, or at trial, discloses a significant part of the communication. *Id.* at 612–34 (*citing,* as examples, *Prucha v. M & N Modern Hydraulic Press Company,* 76 F.R.D. 207 (W.D.Wis.1977); *Joseph Schlitz Brewing Company v. Muller & Phipps (Hawaii), Ltd.,* 85 F.R.D. 118 (W.D.Mo. 1980).

A thoughtful analysis of the competing interests pertinent to the issue of disclosure of privileged documents pursuant to Fed.R.Evid. 612 is offered by the court in *Barrer v. Women's National Bank,* 96 F.R.D. 202 (D.C.D.C.1982). The pragmatic approach adopted by the court in *Barrer*

suggests that waiver should be found when the testimony of the witness discloses the substance of selected portions of the confidential communication. *Id.* at 205. As the *Barrer* court recognized, selective utilization of a confidential communication would indeed prove damaging to the adverse party. *Id.* at 205. The *Barrer* court adopted the approach suggested by Judge Weinstein for application of Fed.R.Evid 612 where the work-product doctrine is invoked to prevent disclosure:

> ... If the adverse party demands material which the party producing the witness claims reflects solely the attorney's thought processes, the judge should examine the material *in camera.* Unless the judge finds that the adverse party would be hampered in testing the accuracy of the witness's testimony, he should not order production of any writings which reflect solely the attorney's mental processes.

3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE par. 612[04] at 612–40 (1987).[2]

In analyzing the proper relationship between the disclosure rule embodied in Fed. R.Evid. 612 and the attorney-client privilege, the court must attempt to strike a balance which fosters the considerations upon which the disclosure rule and attorney-client privilege are premised. Prudence dictates that the court afford Fed.R. Evid. 612 a construction which does not unnecessarily infringe upon the right afforded a litigant by the attorney-client privilege, but which compels disclosure where necessary to avoid prejudice to the litigant's adversary. In that regard, the court views, as better reasoned, that construction of Fed.R.Evid. 612 which mandates production of privileged material where the witness, after having refreshed his recollection with the contested material, discloses a significant portion of the substance of that material.

In the present case, Baker has established that Gillespie refreshed his recollec-

**2.** The approach suggested by Judge Weinstein has been adopted by at least one court with respect to contested documents as to which the party resisting discovery asserted the work

product doctrine to preclude discovery. *See, Al–Rowaishan Establishment Universal Trading and Agencies, Ltd. v. Beatrice Foods Company,* 92 F.R.D. 779, 780–81 (S.D.N.Y.1982).

tion prior to testifying with those materials as to which CNA asserts the attorney-client privilege. The entire essence of Gillespie's testimony, however, goes to the historical facts surrounding his relationship with CNA and its insured. The obvious thrust of Baker's inquiry was to ascertain Gillespie's understanding as to whether an attorney-client relationship existed between he and CNA. The testimony does not delve into the substance of the contested confidential communications which are the subject of the motion to compel now before the court. Consequently, the court is compelled to conclude that Gillespie's testimony did not constitute a waiver of the attorney-client privilege as it pertains to the contested documents at issue.

### B. Work Product Doctrine

The remaining two documents to which Baker's motion to compel is directed are two internal CNA memoranda. As noted, CNA asserts that these memoranda are protected from disclosure by the work-product doctrine encompassed in F.R.Civ.P. 26(b)(3), in that the memoranda were prepared in anticipation of this litigation. Noting that the subject memoranda post-date settlement of the underlying tort claim, CNA further asserts the memoranda are irrelevant to the issues presented in the present action.

The parties' dispute over the contested memoranda obviously presents the question of paramount significance in the application of Fed.R.Civ.P. 26(b)(3), that is, whether the material sought was prepared in anticipation of litigation or for trial.

The court begins its analysis cognizant of the fact that the protection afforded by Fed.R.Civ.P. 26(b)(3) does not extend to materials assembled in the ordinary course of business. Fed.R.Civ.P. 26, *Advisory Committee's Notes to the Federal Rules of Civil Procedure*, 48 F.R.D. 487, 497–508 (1969). Case interpretations also support the principle enunciated by the Advisory Committee's Notes, to the effect that where the contested material is prepared with the primary motive of assisting in a party's day to day business, the material is not protected trial preparation material even if there exists a likelihood of ultimate litigation. *See, Soeder v. General Dynamics Corporation*, 90 F.R.D. 253 (D.Nev. 1980); *Fine v. Bellefonte Underwriters Insurance Company*, 91 F.R.D. 420 (S.D.N.Y.1981). Therefore, in assessing whether the privilege should apply to a particular document the critical inquiry is whether preparation for litigation was a primary motivation leading to development of the document. *See, U.S. v. Davis*, 636 F.2d 1028 (5th Cir.1981). A generalized alertness to the possibility of litigation will not suffice to bring material within the purview of the work product doctrine. *See, Atlanta Coca–Cola Bottling Company v. Transamerica Insurance Company*, 61 F.R.D. 115 (N.D.Ga.1972).

■ With respect to the contested documents in the case at bar, that memorandum dated October 20, 1986, from one Doug Fisher to one Leslie Barthlett, is a document prepared in response to a clear threat of litigation, and not merely a document prepared in the ordinary course of business with a general anxiety of potential litigation. The document contains the mental impressions and conclusions of a representative of CNA. While the existence of mental impressions and conclusions in a particular document is not determinative of whether those documents constitute trial preparation material, where those impressions and conclusions are rendered with the purpose of litigation in mind the document is entitled to the protection afforded by the work product doctrine. *See, Abel Investment Company v. United States*, 53 F.R.D. 485 (D.Neb.1971). Consequently, the October 20, 1986, memorandum is not discoverable.

With specific reference to the memorandum dated March 9, 1987, the court finds that particular document to be nothing other than a document prepared in the ordinary course of CNA's business. While the document refers to the fact that Mr. Gillespie had been retained by CNA, the document was clearly not prepared for the purpose of this litigation, and is the proper subject of discovery.

### II.

■ Baker served two interrogatories requesting CNA to identify any lawsuit filed

against that entity within the last five years which advances a claim based upon an alleged breach of the duty to "deal fairly and in good faith", or breach of the Unfair Claim Settlement Practices Act of the Montana Insurance Code, Mont.Code Ann. § 33–18–201 (1987). CNA objects to the unlimited nature of the inquiry, contending the request greatly exceeds the breadth of relevance. CNA submits that Baker's inquiry regarding other litigation must necessarily be limited to litigation prosecuted pursuant to the laws of Montana, specifically Mont.Code Ann. § 33–18–201 (1987). With respect to similar litigation prosecuted against CNA under the laws of another jurisdiction, CNA asserts the burden is upon Baker to establish that a sufficient similarity exists between the standards established in Montana and the other jurisdiction sufficient to warrant the contemplated discovery.

This court has been called upon in the past to address the propriety of discovery requests designed to elicit information regarding similar "bad faith" litigation in which an insurance company has been involved. *See, Larson v. Colonial Life and Accident Insurance Company*, CV–83–111–GF (D.Mont., March 23, 1984); *Laden v. The Horace Mann Insurance Company*, CV–85–169–GF (D.Mont. January 13, 1986). Information regarding a particular insurance company's settlement practices is relevant to an action prosecuted under Mont. Code Ann. § 33–18–201 (1987), since liability under the act may only be imposed upon a showing by the claimant that the insurer engages in prohibited conduct as a "general business practice". Accordingly, when exercising diversity jurisdiction over an action presented under section 33–18–201, this court is called upon to define the proper scope of discovery essential to the prosecution of a substantive right founded in state law. When presented with the issue in *Larson v. Colonial Life and Accident Insurance Company, supra,* this court observed:

The limitation [of discovery] to Montana lawsuits emanates from the fact that the existence or non-existence of a cause of action for bad faith in the insurance context necessarily turns on state law. Thus, an act or course of conduct which may be actionable in Montana may not be actionable in some other state.

The rationale expressed in *Larson* was again followed by this court in *Laden v. The Horace Mann Insurance Company, supra,* with the proviso that the discovering party must establish, to the satisfaction of the court, that the obligation imposed upon the insurer by the laws of another jurisdiction were sufficiently similar to warrant a conclusion that the information pertaining to suits in that jurisdiction could reasonably be expected to lead to the discovery of admissible evidence. While Baker advances a general assertion that the obligations imposed upon insurance companies by several other jurisdictions are similar to the obligations imposed by Mont. Code Ann. § 33–18–201 (1987), Baker has not established, to the satisfaction of the court, that sufficient similarity exists between the obligations imposed by the law of Montana and the obligation imposed by the law of any particular jurisdiction to warrant discovery of information relating to litigation from a jurisdiction other than Montana. In that regard, the interrogatories posed by Baker do not contain any specified limitation. Until such time as Baker satisfies the burden of establishing sufficient similarity, the court deems it appropriate to sustain CNA's objection.

### III.

■ The final issue presented by Baker's motion to compel focuses on the discoverability of information regarding CNA's financial status. CNA resists pretrial discovery of information regarding its financial status, contending that Baker is not entitled to the information until he establishes a *prima facie* case on the issue of punitive damages.

In this action, Baker is seeking both actual and punitive damages. The Supreme Court of the State of Montana has consistently held that the financial status of a party is admissible on the issue of punitive damages. *Butcher v. Petranek*, 181 Mont. 358, 365, 593 P.2d 743, 747 (1979); *Lauman v. Lee*, —— Mont. ——, 626 P.2d 830

**330**

(1981). This rule of law is now codified at Mont.Code Ann. § 27–1–221 (1987). CNA asserts, however, that even if information regarding the financial status of a party is relevant and discoverable under the appropriate circumstances, the circumstances of the present action do not warrant disclosure of such information. CNA submits that information of its financial status is irrelevant and immaterial to this action until such time as Baker makes a *prima facie* case showing that he is entitled to punitive damages. CNA's argument in this regard is specious.

The court is acutely aware of the rule of law that any evidence of the financial condition of a party is only relevant to the issue of punitive damages, and that such evidence is admissible only after the adverse party has established a *prima facie* case that punitive damages are appropriate. Mont.Code Ann. § 27–1–221 (1987). CNA's reliance on that rule of law in the present context is misplaced. The issue presented concerns the pretrial discoverability of information relating to a party's financial status, not its admissibility.

Ordinarily, Fed.R.Civ.P. 26(b) does not permit the discovery of facts concerning a party's financial status since such matters are not relevant, nor can they reasonably be expected to lead to the discovery of admissible evidence. Where a claim for punitive damages is made, however, a party's financial status is relevant to the subject matter of the action and thus a proper subject of pretrial discovery. *See, Bergeson v. National Surety Corporation,* 112 F.R.D. 692 (D.Mont.1986); *see also, Vollert v. Summa Corporation,* 389 F.Supp. 1348 (D.Haw.1975); *Holliman v. Redman Development Corporation,* 61 F.R.D. 488 (D.So.Car.1973).

It is elemental that the claimant must first prevail on the issue of liability and further establish that the adverse party's conduct was of such a nature that punitive damages would be justified, before evidence of the financial condition of the adverse party would be relevant. The existence of these issues, however, does not preclude the claimant from adequately preparing his case as to damages. The determination of whether evidence of the finan-

cial condition of a party is admissible is to be made during trial upon proper motion by that party. Therefore, it is not premature for Baker to demand discovery of information of the financial status of CNA, rather it is necessary that Baker have pretrial access to that information.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the plaintiff's motion to compel discovery be, and the same hereby is, GRANTED to the extent set forth herein. The motion is, in all other respects, DENIED. The defendants shall provide the plaintiff with appropriate responses to the discovery requests at issue within ten (10) days hereof. For purposes of appeal, the Clerk of Court shall retain, under seal, all documents submitted *in camera.*