Peggy DION, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

No. CV–95–122–GF.

United States District Court,
D. Montana,
Great Falls Division.

Feb. 9, 1998.

D. Patrick McKittrick, Timothy J. McKittrick, McKittrick Law Firm, PC, Great Falls, MT, for plaintiff.

Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, PC, Great Falls, MT, for defendant.

### *MEMORANDUM AND ORDER*

HATFIELD, Senior District Judge.

### *BACKGROUND*

On December 31, 1993, the plaintiff, Peggy Dion, sustained serious personal injuries when the vehicle in which she was a passenger was struck by a vehicle driven by Bobby

O'Brian Cole, Jr. Cole's vehicle was insured by Western Agriculture Insurance Company, a subsidiary of Mountain West Farm Bureau Mutual Insurance Company. At the time of the accident, Dion and her husband were named insureds under an automobile liability policy issued by the defendant, Nationwide Mutual Insurance Company ("Nationwide").

On July 28, 1995, Dion's counsel advised Nationwide that he had received an offer from Cole's insurance company to settle Dion's claim for the policy limits of $25,000, and requested Nationwide's consent to settle with Cole's insurer. In addition, counsel advised Nationwide of his intent to advance a claim for underinsured motorist benefits under the Dions' policy.

On September 12, 1995, Nationwide informed Dion's counsel that it had performed an asset check on Cole's finances, and agreed to waive its subrogation rights as against Cole. Accordingly, Dion settled her claim against Cole for his policy limits of $25,000. Dion asserted the settlement did not cover all of her losses, and she continued to pursue a claim for underinsured motorist coverage, under the Nationwide policy, for the excess damages she incurred.

On October 9, 1995, Nationwide denied coverage for Dion's injuries. On October 31, 1995, Dion instituted the above-entitled action, pursuant to 28 U.S.C. §§ 2201–2203, seeking a declaration regarding her entitlement to underinsured motorist benefits under the Nationwide policy. In addition, Dion's complaint advanced claims based upon Nationwide's purported (1) breach of the Montana Unfair Trade Practices Act, Mont. Code Ann. §§ 33–18–201, *et seq.;* and (2) violation of the duty of good faith and fair dealing attendant the insurance contract.

On April 22, 1997, the court entered a memorandum and order, holding the Nationwide policy provided underinsured motorist coverage to Peggy Dion for her injuries sustained in the underlying accident. On June 13, 1997, the declaratory judgment portion of the above-entitled action was settled by the parties for $150,000.00.

On May 8, 1997, the court conducted a status conference for the purpose of establishing a schedule for resolution of Dion's remaining claims for relief. Pursuant to discussion elicited at said conference, the court entered a scheduling order which called for, *inter alia,* the parties to disclose, on or before July 11, 1997, the identity of their respective expert witnesses.

On July 15, 1997, Nationwide filed its list of expert witnesses, which identified Paul C. Meismer, its attorney of record, as Nationwide's expert witness regarding insurance law, bad faith and unfair trade practices. Attorney Meismer subsequently moved the court for leave to withdraw as counsel for Nationwide. The court, on August 11, 1997, granted Meismer's request. Shortly thereafter, Nationwide's present counsel moved the court for leave to amend the scheduling order in order to name two additional expert witnesses. Dion strenuously objected to Nationwide's request.

On August 29, 1997, Nationwide filed an Amended List of Expert Witnesses, which added two witnesses—James Heckathorn (Insurance law, bad faith and unfair trade practices) and James Swan (Claims handling procedures, insurance law, bad faith and unfair trade practices). On September 3, 1997, Dion moved the court to enter an order striking the subsequently named experts.

On October 3, 1997, the court entered an order directing Nationwide to submit certain documents, *i.e.,* the insurance claims file generated and maintained by Nationwide with respect to Dion's claim for underinsured motorist benefits, for the court's *in camera* inspection. The requested documents are the subject of a pending motion to compel, pursuant to Fed.R.Civ.P. 37, filed by Dion.

In resisting the production of the claims file material, Nationwide asserts the documents therein are protected from discovery by the attorney-client privilege and/or the work product doctrine as encompassed in Fed.R.Civ.P. 26(b)(3). Specifically, Nationwide maintains that material generated after October 11, 1995, the date Dion threatened to file a "bad faith" suit, were prepared "in response to a clear threat of litigation, and not merely document[s] prepared in the ordinary course of business with a general anxiety of potential litigation." Accordingly, Na-

**292**

tionwide argues the materials are protected from discovery in the present first-party "bad faith" action. Having reviewed each of the *in camera* documents and considered the application of the privilege asserted by Nationwide in opposition to production of the particular document, the court is prepared to rule.

## DISCUSSION

### A. Work Product

■ Under the work product doctrine first articulated by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), materials prepared by an attorney in anticipation of litigation are protected from disclosure. The protection afforded by the work product doctrine has since been extended to encompass materials provided "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *See,* Fed.R.Civ.P. 26(b)(3). The primary purpose of the work product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mutual Auto. Ins. Co.,* 976 F.2d 573, 576 (9th Cir.1992), *quoting, Admiral Ins. Co. v. United States District Court,* 881 F.2d 1486, 1494 (9th Cir.1989).

The fact that material may have been prepared in anticipation of litigation does not, however, render it immune from discovery. A party may discover work product material, provided the movant establishes a substantial need for the material and an inability to obtain the equivalent by other means. *See,* Fed.R.Civ.P. 26(b)(3); 8 WRIGHT & MILLER, FED.PRAC. & PROC.CIVIL § 2024 (1970). However, even if the movant is able to make the requisite showing, Rule 26(b)(3) further directs the court to safeguard the disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation at hand, material which

is generally referred to as "opinion work product".

■ Opinion work product is discoverable, however, when mental impressions are directly at issue in a case and the need for the material is compelling. *See, Holmgren v. State Farm Mutual Auto. Ins. Co., supra,* 976 F.2d at 577.

> In a bad faith insurance claim settlement case, the "strategy, mental impressions and opinions of [the insurer's] agents concerning the handling of the claim are directly at issue." ... Unless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim. We review the question on a case-by-case basis.
>
> If a party has demonstrated the requisite level of need and hardship, the other party must produce the material.

*Id.*

■ In the case *sub judice,* Nationwide asserts the claims file material generated after October 11, 1995, the date Dion first threatened to file a "bad faith" suit, were prepared "in anticipation litigation" and, as a result, are not discoverable. Assuming, *arguendo,* the subject material was prepared "in anticipation of litigation,"[1] the dispositive issue, in resolving the pending motion to compel, is whether Dion has established the requisite level of need and hardship to compel production of the work product contained within Nationwide's claim file.

■ In order to prevail upon her claim under the Montana Unfair Trade Practices Act, Dion must establish Nationwide lacked reasonable justification for refusing payment of her claim for underinsured motorist benefits. *See,* Mont.Code Ann. § 33–18–201 (1995). Accordingly, the nature of Dion's claim necessarily places the strategy, mental

---

1. Any determination as to whether sufficient adversity exists as to warrant the assertion of the work product privilege with respect to communications in an insurer's claims file must necessarily be made on a case-by-case basis. In determining that point in time at which an insurer's activity shifts from the ordinary course of busi-

ness to anticipation of litigation, a court must determine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *APL Corp. v. Aetna Cas. & Surety Co.,* 91 F.R.D. 10, 18 (D.Md.1980).

impressions and opinions of Nationwide's agents regarding the underlying claim directly in issue. Because the claims file contains a detailed history of how Nationwide processed and considered Dion's claim, the documents therein are certainly relevant to the issues raised by Dion's complaint. Relevance, however, is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue. *See, Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3rd Cir.1994).

In *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Court was asked to decide whether an attorney's testimonial use of privileged materials prepared by him to enable him to present his client's case constituted a waiver of the work product privilege. The Court ultimately held that counsel had indeed waived the privilege with respect to the matter about which he testified. 422 U.S. at 239–240, 95 S.Ct. 2160.

> [t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived.... Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*Nobles, supra*, 422 U.S. at 237, 95 S.Ct. 2160.

The processing of a claim by an insurer is almost entirely an internal operation and its claims file reflects a unique, contemporaneous record of the handling of the claim. The need for such information "is not only substantial, but overwhelming." *See, Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725, 734 (1983) (*en banc*). Accordingly, Dion's claim herein, *i.e.*, violation of the Montana Unfair Trade Practices Act, necessarily creates a compelling need to discover the full context in which the insurer handled the underlying claim. *See, Palmer by Diacon v.* *Farmers Insurance*, 261 Mont. 91, 861 P.2d 895, 911 (1993).

In *Palmer*, the Montana Supreme Court drew a distinction between the opinion work product of the insurer's attorneys and its representatives who actually denied the underlying claim.

> Farmers [Insurance Exchange], however, did not rely on advice of counsel as a defense to the bad faith charge. The insurer, not the attorneys, made the ultimate decision to deny coverage in this case. Therefore, attorney mental impressions and opinions are not directly at issue, so the threshold requirement of the test for discoverability of opinion work product is not met. As a result, materials that contain the mental impressions and opinions of Farmers' former attorneys are immune from discovery under the work product doctrine, unless a waiver occurred.

*Palmer, supra*, 861 P.2d at 912.

 In the case *sub judice*, the ordinary and opinion work product of Nationwide's agents, who made the decision regarding Dion's claim for benefits, are clearly discoverable. In addition, the court concludes Nationwide, in naming Paul Meismer as an expert witness, has necessarily waived the right to assert the work product privilege with respect to the remainder of the claims file. Meismer was Nationwide's attorney of record while Dion's claim for underinsured motorist benefits was litigated. Because Nationwide has named Meismer as an expert witness, Dion has a particularized and compelling need to discover Meismer's opinion work product. Without said discovery, Dion will be unable to ascertain the basis and facts upon which Meismer's opinions are based and, as a result, her ability for effective cross-examination on crucial issues will undoubtedly be impaired.

Accordingly, Dion has established a compelling need justifying the discovery of the ordinary and opinion work product documents contained in Nationwide's claims file. Dion's motion to compel is hereby GRANTED with respect to those documents found the *in camera* submission to which Nationwide has asserted the privilege of ordinary and opinion work product.

### B. *Attorney–Client Privilege*

■ The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "[R]ecognition that the privilege is essential to the lawyer's role creates tension between the privilege and discovery which requires disclosure of relevant facts within the attorney's knowledge." *In re LTV Securities Litigation*, 89 F.R.D. 595, 600 (N.D.Texas 1981). In order to help relieve this tension, the attorney-client privilege "is construed no more broadly than is necessary to effectuate its purpose." *Id. see also, United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

■ The scope of the protection afforded by the attorney-client privilege in an action in federal court, where jurisdiction is predicated on diversity of citizenship, is determined by resort to state law. *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 323 (D.Mont. 1988), *citing*, Fed.R.Evid. 501; Fed.R.Civ.P. 30(c). The attorney-client privilege, which extends to written communications from an attorney to his client, *see, Kuiper v. District Court of the Eighth Judicial District*, 193 Mont. 452, 632 P.2d 694, 700–701 (1981), is codified in Montana at Mont.Code Ann. § 26–1–803 (1995):

> (1) An attorney cannot, without consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.

> (2) A client cannot, except voluntarily, be examined as to any communication made by him to his attorney or the advice given to him by his attorney in the course of the attorney's professional employment.[2]

■ The attorney-client privilege applies with equal force in "bad faith" insurance litigation as in all other civil litigation. *See, Baker, supra*, 123 F.R.D. at 323. The Montana Supreme Court has, in the context of a third-party "bad faith" action, expressly rejected the proposition that the attorney-client privilege must give way, in "bad faith" litigation, in order for a plaintiff to determine whether an insurer had a good faith basis for its decision. *See, State ex rel U.S. Fidelity & Guaranty Co. v. The Montana Second Judicial District Court*, 240 Mont. 5, 783 P.2d 911 (1989). Moreover, the attorney-client privilege protects communications in first-party bad faith cases when the insurer's attorney did not represent the interests of the insured in the underlying case. *Palmer by Diacon v. Farmers Insurance, supra*, 861 P.2d at 906.

■ Accordingly, Dion's prosecution of the present litigation does not, in and of itself, abrogate Nationwide's right to claim the attorney-client privilege as it pertains to communications generated in relation to the claim for underinsured motorist benefits. *See, Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 556 (E.D.La. 1996) (A litigant's pleading of a claim or defense to which attorney-client communications are relevant does not, by such pleading alone, waive the attorney-client privilege.). However, the attorney-client privilege may be waived if a party "injects into ... litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042, 1046 (2nd Cir.1992), *citing, GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir.1987); *Laughner v. United States*, 373 F.2d 326 (5th Cir.1967). A privilege may also be impliedly waived where a party makes assertions in the litigation or "asserts a claim that in fairness requires examination of the protected commu-

---

**2.** Noteworthy is the fact that Mont.Code Ann. § 26–1–803 was amended by the Montana Legislature in 1989 to include subpart 2 which codifies the right, recognized in common law, of an individual from being compelled to disclose the substance of confidential communications made to an attorney for the purpose of obtaining professional advice. *See, Baker*, 123 F.R.D. at 324.

Prior to the codification of this aspect of the attorney-client privilege as recognized at the common law, Mont.Code Ann. § 26–1–803 was viewed as not precluding an individual civil litigant, called as a witness, from being compelled to disclose communications the individual litigant had with an attorney, and which bore upon the litigation at hand. 123 F.R.D. at 324.

nications." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir.1991), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). *See also, In re Bairnco Corp. Securities Litigation,* 148 F.R.D. 91, 101 (S.D.N.Y. 1993) ("To permit [defendant] to offer the fact of counsel's conclusions where such conclusions serve [defendant's] purposes without permitting plaintiffs access to all the communications between counsel and [defendant] would prejudice plaintiffs in the prosecution of their action.").

 A court may not, however, find a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1418 (11th Cir.1994), *quoting, Remington Arms Co. v. Liberty Mutual Ins. Co.,* 142 F.R.D. 408, 415 (D.Del.1992). To waive a privilege, a party must do more than merely deny the opposing party's accusations, but must affirmatively raise the issue involving privileged communications. *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987) (Implicit waiver "can occur when a holder relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications."). Nonetheless, the issue need not be raised as an affirmative defense or by the party's pleadings. *In re Hillsborough Holdings Corp.,* 176 B.R. 223, 239 (M.D.Fla.1994).

 An implied waiver of the attorney/client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense. *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). The doctrine of waiver by implication reflects the notion that the attorney-client privilege "was intended as a shield, not a sword." *Cox v. Administrator U.S. Steel & Carnegie, supra,* 17 F.3d at 1418, *citing, GAB Business Services, Inc. v. Syndicate 627, supra,* 809 F.2d at 762. In other words, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id., citing, United States v. Bilzerian,* 926 F.2d 1285 (2nd Cir.1991); *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982) ("Selective disclosure for tactical purposes waives the privilege."). When confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege. *Conkling v. Turner,* 883 F.2d 431, 435 (5th Cir. 1989). *See also, Friction Div. Products v. E.I. Du Pont De Nemours,* 117 F.R.D. 535, 538 (D.Del.1987) (Where an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party "an opportunity to uncover the foundation for those assertions in order to contradict them.").

 In the case *sub judice,* Nationwide maintains it will not assert advice of counsel as a defense to Dion's claims. If Nationwide were to assert the advice of counsel defense, any and all communications with its attorney would clearly be discoverable. *See, Palmer by Diacon v. Farmers Insurance, supra,* 861 P.2d at 907 ("The attorney-client privilege applies 'unless the insurer directly relies on advice of counsel as a defense to the bad faith charge.'"). Nevertheless, while Nationwide may not formally raise an advice of counsel defense, its decision to name attorney Meismer as an expert witness, bespeaks volumes about the posture of Nationwide's defense. Moreover, irrespective of the legal defenses Nationwide expects to raise, Dion's case will perforce place at issue Meismer's handling of the underlying claim. To permit Nationwide to offer Meismer's conclusions and expert opinions regarding the underlying claim, where such conclusions and opinions serve Nationwide's purposes, without permitting Dion access to all the communications between Meismer and Nationwide, would unduly prejudice Dion in the prosecution of the present action.

Consequently, the court concludes that Nationwide, upon naming its attorney as an expert witness, assumed the risk that any subsequent invocation of the attorney-client privilege would be abrogated. Accordingly,

the court concludes that the communications between Meismer and Nationwide, up until that point in time at which the claim for underinsured motorist benefits was settled, should be made available to Dion.

*CONCLUSION*

Therefore, for the reasons set forth herein, the court concludes Dion's motion to compel is appropriately GRANTED to the extent set forth herein. Nationwide shall make the *in camera* materials available to Dion within ten (10) days of the date hereof.

IT IS SO ORDERED.