

DA 11-0704

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 6

IN RE THE MARRIAGE OF:

TERANCE PATRICK PERRY,

       Petitioner and Appellee,

  and

KAREN JANE PERRY,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 09-841
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Linda Osorio St. Peter; St. Peter Law Offices, P.C.; Missoula, Montana

      For Appellee:

          Gail H. Goheen; Gail H. Goheen, P.C.; Hamilton, Montana

                         Submitted on Briefs:  September 12, 2012

                                     Decided:  January 15, 2013

Filed:

                      _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Karen Jane Perry (Karen) appeals the Fourth Judicial District Court's order denying her request to disqualify and enjoin attorney Gail H. Goheen (Goheen) from representing Appellee Terance Patrick Perry (Terance) in this proceeding. We affirm and address the following issues:

¶2 *1. Did the District Court err by denying Karen's motion to disqualify Goheen as counsel for Terance pursuant to Rule 1.20 of the Montana Rules of Professional Conduct?*

¶3 *2. Did Goheen violate her duty to Karen under Rule 1.9 of the Montana Rules of Professional Conduct?*

¶4 *3. Did the District Court err by permitting Goheen to testify at the disqualification hearing?*

¶5 *4. Did the District Court err by relying on privileged communications between Goheen and Karen?*

¶6 *5. Was Karen denied due process when the District Court relied on documents and sworn testimony not subject to cross examination?*

¶7 *6. Did the District Court err by determining that Karen abused the rules of disqualification?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 On December 4, 2009, Terance filed for dissolution of his marriage to Karen in Missoula County. Karen subsequently filed a dissolution proceeding in Massachusetts, which was dismissed for lack of subject matter jurisdiction. Terance is a partner of the law firm of Datsopoulos, MacDonald & Lind, P.C. in Missoula. Terance was represented by three different attorneys before filing a notice of withdrawal and substitution of counsel on January 24, 2011, naming himself as counsel of record. On February 25,

2

2011, Terance filed a subsequent substitution of counsel naming Goheen as his counsel of record.

¶9 In January 2008, before any dissolution proceedings were filed, Karen contacted Goheen's office in Hamilton seeking legal advice concerning the potential filing of a dissolution action. Karen spoke with Goheen's assistant, Kailah Van Note (Van Note), and later Goheen herself.

¶10 Karen filed a motion to disqualify Goheen and an application for a preliminary injunction on March 1, 2011. Terance opposed the motion and filed two office memorandums and affidavits from Goheen and Van Note regarding their telephone conversations with Karen. A disqualification hearing was held on November 7, 2011. Two days before the hearing, Karen filed a motion to strike the office memorandums and affidavits as privileged, asserting that the documents "included information which is harmful to [Karen]." The District Court took the motion under advisement, granted the parties' motion to seal the documents from public access, limited Goheen's testimony about the documents, and did not permit Karen to cross-examine Goheen about the documents.

¶11 At the hearing, Karen testified that she provided personal information about herself and Terance during one telephone conversation with Van Note and two telephone conversations with Goheen. Karen said the conversations with Goheen lasted 45 minutes and 3 minutes, respectively. She said that she gave information about the marriage,

including domestic abuse[1] and finances, and that she asked for legal advice on her "position," which she described as: "[w]here I wanted to end up. If I could end up at a certain place. What would happen if I stayed here. What happen if I left here. Goals of settlement. My weaknesses and fears." Karen testified that she identified individuals who were present during domestic disputes. She said Goheen quoted her a "ridiculously enormous" retainer, but conceded that she was never sent a retainer agreement and that Goheen had "denied representation." Karen admitted awareness of some sort of conflict between Goheen and Datsopoulos, MacDonald & Lind. Karen testified that she thought the information she gave to Goheen's office would be confidential. When asked by her counsel why she believed she had an attorney-client confidential relationship with Goheen in 2008, Karen said "[b]ecause it was promised to me."

¶12 When asked "[h]ow does Gail Goheen's representation of your husband now, in this dissolution of marriage that he brought three years later, harm you," Karen responded:

> [P]sychologically, it's like getting beat up again by him. It's like I can't trust anybody. There's nobody I can turn to. He took away everything and everybody I could trust. And now he's done it again with somebody who I confided in, who's now on the opposite side of the table. And it – I – I'm betrayed again. It's another form of abuse and control . . .

When asked "[i]s there anything in the communications [from Goheen], even within the brief of the attachments, that you feel have already harmed you," Karen responded, "Yeah . . . I've been called a liar. I've been discredited already."

---

[1] Terance denies the abuse allegations, the validity of which are beyond the scope of this appeal.

4

¶13 Overruling Karen's objections that Goheen "can't testify to attorney-client communications and that she cannot be an advocate and material witness," the District Court permitted Goheen to offer testimony about the length of the telephone conversations, her office procedures, and background information established in the court file. Goheen testified without another attorney questioning her. Goheen admitted to having one conversation with Karen in January 2008, which she said lasted less than 12 minutes because the time entry information on the record was left blank and it is her office policy that time information is left blank when a conversation lasts 12 minutes or less. Goheen denied having a second conversation with Karen. Explaining her office procedures for new clients, Goheen stated:

> Whenever I meet with a client, Your Honor, I don't do it over the phone, in the sense of getting information. I sit down and I meet with the client for a half a day, usually, is my first meeting with a client on a divorce action.
> It's at that time that I go over everything I can think of, in terms of – at least broadly, in terms of the scope of the case, what the assets may be, the liabilities may be, whether there are children, what the nature of the relationship is with the party. All details.
> I'm not interested in it, information, in terms of any details prior to that time. And my policy is that I never give anybody a retainer quote until I get all that information.
>                                         . . .
> So I can state unequivocably [sic] that I would not have given a retainer quote to Karen Perry, or any other client under these circumstances.

Goheen said she was aware that Karen's husband was an attorney at Datsopoulos, MacDonald & Lind and that she does not represent someone against an attorney in Ravalli or Missoula County when the opposing attorney is from a firm that she regularly faces in divorce cases. Goheen said she did not remember the details of a conversation

5

with Karen, relying on the office memorandums created from her and Van Note's conversations with Karen. Goheen said that a 45 minute telephone conversation did not occur, and that her telephone records indicate she made a two or three minute telephone call to refuse the case and refer Karen to someone else. Goheen said she was notified by Karen's current attorney that Karen had contacted Goheen's office in September 2009 and in January 2010 but that her telephone records revealed only two telephone conversations with Karen in January 2008. Van Note also testified about Goheen's office procedures.

¶14 Throughout the hearing, Goheen referred to, and Karen repeatedly objected to, the office notes, memorandums, and the related affidavits, which were the subject of Karen's motion to strike. After the hearing, the District Court issued an order stating:

> Before issuing its ruling, the Court requests that Ms. Goheen submit a sealed copy of the "Note" from her office discussed at the hearing, along with any other relevant materials generated by Ms. Goheen or her staff pertaining to [Karen's] communications with Ms. Goheen and/or her office, for in camera review.

After receiving this information, the District Court denied Karen's motion to disqualify and application for a preliminary injunction. The court kept the documents sealed from public access. It found that no attorney-client relationship existed between Karen and Goheen, commenting that it was "hard to believe that, as a seasoned paralegal, Karen 'reasonably believed' she had an attorney-client relationship with Ms. Goheen." The District Court reasoned that Karen's motion to disqualify was "a tactic designed to delay resolution of this case and force hardship and increased litigation expenses upon

Terance," and "disqualification of Ms. Goheen would be unjust and unreasonably harsh in this case." Karen appeals.

## STANDARD OF REVIEW

¶15 "A district court's denial of a motion to disqualify is reviewed for an abuse of discretion." *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 13, 363 Mont. 366, 272 P.3d 635 (citing *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, 16 P.3d 1002). An abuse of discretion occurs if the district court acted "arbitrarily without the employment of conscientious judgment or exceed[ed] the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." *Schuff*, ¶ 27. "The existence of an attorney-client relationship is generally a question of fact." *Krutzfeldt*, ¶ 14 (citations omitted). "We review a district court's factual determinations for clear error." *Krutzfeldt*, ¶ 14 (citation omitted). District courts have broad discretion to determine the admissibility of evidence, including oral testimony, and we review for abuse of discretion. *Clark v. Bell*, 2009 MT 390, ¶ 16, 353 Mont. 331, 220 P.3d 650; *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, 103 P.3d 503.

¶16 "While the denial of a temporary or permanent injunction is reviewed for 'manifest abuse of discretion,' deference is not applied to the district court's conclusions of law, which are reviewed de novo to determine whether its interpretation of the law is correct." *Krutzfeldt*, ¶ 13 (citing *City of Whitefish v. Bd. of Co. Commrs. of Flathead Co.*, 2008 MT 436, ¶ 7, 347 Mont. 490, 199 P.3d 201; *Jefferson Co. v. Dept. of Envtl. Quality*,

7

2011 MT 265, ¶ 16, 362 Mont. 311, 264 P.3d 715). "Ultimately, it is this Court's 'constitutional mandate to fashion and interpret the Rules of Professional Conduct.'" *Krutzfeldt*, ¶ 15 (quoting *In re Rules of Prof. Conduct*, 2000 MT 110, ¶ 9, 299 Mont. 321, 2 P.3d 806).

## DISCUSSION

¶17    *1. Did the District Court err by denying Karen's motion to disqualify Goheen as counsel for Terance pursuant to Rule 1.20 of the Montana Rules of Professional Conduct?*

¶18    Karen claims that the District Court erred by not disqualifying Goheen because an implied attorney-client relationship was formed between Karen and Goheen when Karen gave Goheen information that was "confidential" in nature, citing *Krutzfeldt* and *Pro-Hand Services Trust v. Monthei*, 2002 MT 134, 310 Mont. 165, 49 P.3d 56.  Terance argues that the District Court correctly found that there was "nothing disclosed by Karen to Ms. Goheen or her staff 'that could be significantly harmful' to Karen in this matter" to warrant disqualification under Rule 1.20 of the Montana Rules of Professional Conduct.  Karen replies that she is "psychologically harmed" by the fact that Terance has hired Goheen and "[t]he district court did not properly address the correct standard or pertinent issue relative to Rule 1.20(c) with respect to the harm to *Karen* in determining Goheen's conflict of interest."  (Emphasis in original.)

8

¶19 We have not yet addressed a lawyer's duty to prospective clients under the Montana Rules of Professional Conduct as amended in 2004.[2] We considered this relationship under prior rules in *Pro-Hand Services*, stating:

> An implied attorney-client relationship may result when a prospective client divulges confidential information during a consultation with an attorney for the purpose of retaining the attorney, even if actual employment does not result. . . . In determining whether an implied attorney-client relationship exists, we will examine whether the alleged client reasonably believed that such relationship was formed.

*Pro-Hand Services*, ¶ 14 (internal citations omitted). Our ruling in *Pro-Hand Services* was based upon former Rule 1.9, entitled "Conflict of Interest, Former Client," requiring an analysis of whether confidential information had been exchanged. We adopted the Ninth Circuit's "reasonable probability" rule to determine whether confidences were disclosed. *Pro-Hand Services*, ¶ 15 (citing *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980)). If confidential information was not disclosed, then an attorney-client relationship did not exist. *Pro-Hand Services*, ¶ 14. "If an attorney-client relationship was not formed, there is no conflict of interest," *Pro-Hand Services*, ¶ 13, and an attorney could then represent a client in a matter that was adverse to the former prospective client.

¶20 In 2004, Rule 1.20, entitled "Duties to Prospective Clients" was adopted. Rule 1.20 defines and addresses a lawyer's relationship with a prospective client. It provides in its entirety:

---

[2] *See* Or., *In Re: Revising the Montana Rules of Professional Conduct* (Mont. Feb. 17, 2004) (No. 03-264).

9

(a)   A person who consults with or has had consultations with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b)   Even when no client-lawyer relationship ensues, a lawyer who has had consultations with a prospective client shall not use or reveal information learned in the consultation(s), except as Rule 1.9 would permit with respect to information of a former client.

(c)   A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d).  If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d)   Representation is permissible if both the affected client and the prospective client have given informed consent, confirmed in writing, or: (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is promptly given to the prospective client.

M. R. Pro. C. 1.20.

¶21    Instead of determining whether an attorney-client relationship was created by disclosure of confidential information, Rule 1.20 creates duties to the prospective client "[e]ven when no client-lawyer relationship ensues."  M. R. Pro. C. 1.20(b).  Generally, and subject to exceptions discussed herein, a lawyer may not "use or reveal information learned in the consultation(s)" with a prospective client.  M. R. Pro. C. 1.20(b).  Pertinent to the present issue, Rule 1.20 also prohibits a lawyer from representing a party with "interests materially adverse" to the prospective client in the same or substantially related proceeding "if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter."  M. R. Pro. C. 1.20(c).  Thus, Rule 1.20 does not merely consider whether information was divulged by the prospective

10

client but whether such information could be significantly harmful to that person in that or a related matter. Rule 1.18 of the American Bar Association's Model Rules of Professional Conduct (Model Rules) is nearly identical to Montana Rule 1.20. The Committee Comments to Model Rule 1.18 state "the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter." Model R. Prof. Conduct 1.18 cmt. 6 (ABA 2012).

¶22 Our recent holding in *Krutzfeldt* dealt with the distinction between current and former clients. Hoskins, an attorney representing the Krutzfeldts, joined the Crowley Fleck firm, which represented a party opposing the Krutzfeldts. Crowley argued that the Krutzfeldts necessarily became Hoskins' former clients, and were no longer current clients, when Hoskins joined Crowley. *Krutzfeldt*, ¶ 20. We rejected this argument and concluded that Hoskins did not withdraw from representing the Krutzfeldts, that Krutzfeldts were current clients when Hoskins joined Crowley, and a concurrent conflict of interest existed among Hoskins, Krutzfeldts, and Crowley. *Krutzfeldt*, ¶ 26.

¶23 The rule enforced in *Krutzfeldt* applied to current clients, where the proponent of the motion to disqualify "must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court." *Krutzfeldt*, ¶ 17 (quoting *Schuff*, ¶ 36). Rule 1.20 applies to prospective clients and prohibits representation of a party with

11

materially adverse interests in the same or substantially related proceeding if the prospective client divulged information to the lawyer that could be significantly harmful to the prospective client in the matter.

¶24 Karen is a "prospective client" as defined by Rule 1.20(a) ("A person who consults with or has had consultations with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."). Karen called Goheen's office more than once and spoke with Van Note and Goheen concerning representation. The question here does not depend on whether an attorney-client relationship was established or whether Karen reasonably believed such a relationship was formed, as in *Pro-Hand Services*, ¶¶ 13-15. Rather, under Rule 1.20, the question is whether the information conveyed in Karen's conversations could be significantly harmful to Karen in this dissolution proceeding.[3]

¶25 After hearing the testimony, the District Court found that the information conveyed by Karen to Goheen was not harmful to Karen. The court found that Goheen's office documentation of Karen's phone calls and the testimony of Goheen and Van Note were credible and that "there was nothing disclosed by Karen to Ms. Goheen or her staff 'that could be significantly harmful' to Karen in this matter." Karen claims a personal or psychological victimization by Goheen's representation of Terance. While we do not

---

[3] Even if *Pro-Hand Services* governed here, Karen did not persuade the District Court that an implied attorney-client relationship had been established by her reasonable belief a relationship had been formed. *Pro-Hand Services*, ¶ 14. Karen acknowledged that Goheen declined representation of her due to a conflict of some nature between Goheen's firm and Datsopoulos, MacDonald & Lind. Because it is necessary for resolution of the issues raised herein, we affirm the District Court's conclusion that an implied relationship was not formed.

12

minimize the significance of such an effect, Rule 1.20 requires that the lawyer receive "information" that is "significantly harmful" to Karen in the proceeding. M. R. Pro. C. 1.20(c). Karen did not establish that any information she divulged to Goheen in the telephone calls several years earlier could have any impact on the proceeding, particularly since, as discussed below, Goheen was not associated as counsel until three years into the proceeding, by which time substantially more information had been disclosed than the information Karen claims to have shared during those phone calls. We therefore conclude that the District Court did not abuse its discretion in denying Karen's motion to disqualify under Rule 1.20.

¶26 *2. Did Goheen violate her duty to Karen under Rule 1.9 of the Montana Rules of Professional Conduct?*

¶27 Karen claims that Goheen violated Rule 1.9 of the Montana Rules of Professional Conduct, which Karen labels the "duty of loyalty," by representing Terance. Karen's argument under Rule 1.9, entitled "Duties to Former Clients," is premised upon her assumption that an implied attorney-client relationship was established between her and Goheen, making Karen a "former client." However, as noted above, Karen failed to establish an attorney-client relationship, and thus the portion of her argument premised thereon fails. Karen also argues that Goheen violated Rule 1.9 by using or disclosing information Karen had divulged to her. Because the provisions of Rule 1.9 regarding use of former client information are incorporated by Rule 1.20, governing the duties to prospective clients, we take up Karen's argument in that regard.

¶28 Rule 1.20(b) provides that "a lawyer who has had consultations with a prospective client shall not use or reveal information learned in the consultation(s), except as Rule 1.9 would permit with respect to information of a former client." M. R. Pro. C. 1.20(b). In turn, Rule 1.9 states, in pertinent part:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

M. R. Pro. C. 1.9(c).

¶29 Additionally, Rule 1.6, "Confidentiality of Information," generally governs a lawyer's use of client information, and provides:

> (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).
> (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: (1) to prevent reasonably certain death or substantial bodily harm; (2) to secure legal advice about the lawyer's compliance with these Rules; (3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or (4) to comply with other law or a court order.

M. R. Pro. C. 1.6.

¶30 As established under Issue 1, Karen has not demonstrated that Goheen received information that could be significantly harmful to her in this proceeding. At the

disqualification hearing, the District Court first limited Goheen's testimony to information that was "generally known." M. R. Pro. C. 1.9(c)(1). The parties had previously filed information detailing Karen's and Terance's personal information, the parties' financial situations, and Karen's affidavits alleging spousal abuse. In its order, the District Court found that "any information regarding Terance's alleged abuse of Karen is now moot given what Karen herself subsequently disclosed early on in this case." The District Court permitted Goheen to testify concerning the background information in the court file, then permitted Goheen to testify as to the length of the telephone conversations with Karen, and Goheen's office procedures. It was permissible under the Rules for Goheen to use this information about her previous contact with Karen "to respond to allegations in any proceeding concerning the lawyer's representation of the client." M. R. Pro. C. 1.6(b)(3). The District Court properly limited Goheen's testimony to prevent disclosure of Karen's confidences, if any. *See Pro-Hand Services*, ¶ 16.

¶31 Karen's allegations against Goheen are generalized and vague. Goheen's limited use of Karen's information was permitted under Rules 1.6(b) and 1.9(c), and Goheen did not violate a duty to Karen.

¶32 *3. Did the District Court err by permitting Goheen to testify at the disqualification hearing?*

¶33 In a related issue, Karen challenges the District Court's ruling that permitted Goheen to testify in any manner at the hearing. Karen claims this was error because Goheen did not qualify as a "necessary witness" under Rule 3.7 of the Montana Rules of Professional Conduct. Terance responds that Goheen's testimony falls under the

15

exceptions within Rule 3.7 because it was related to the nature of the legal services provided to Karen, M. R. Pro. C. 3.7(a)(2), and because disqualification would render a substantial hardship to Terance, M. R. Pro. C. 3.7(a)(3).

¶34    Rule 3.7, entitled "Lawyer as Witness," provides, in pertinent part:

> (a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:  (1)  the testimony relates to an uncontested issue; (2)  the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

M. R. Pro. C. 3.7(a).  Other jurisdictions have defined the term "necessary witness" in this context as a witness whose testimony is both admissible and unavailable by other means.  *See i.e. Brown v. Spectrum Networks, Inc.*, 904 N.E.2d 576, 580-81 (Ohio 2008); *Sec. Gen. Life Ins. Co. v. Super. Ct.*, 718 P.2d 985, 988 (Ariz. 1986).[4]  If the advocate-witness lawyer knows she will be a necessary witness, it is her burden to establish an exception to Rule 3.7.  *See Klupt v. Krongard*, 728 A.2d 727, 741 (Md. 1999) (citations omitted).  Committee Comments to Model Rule 3.7, which is identical to Montana Rule 3.7, explain:

> Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is

---

[4]A third prong is commonly required in cases where party A calls opposing party B's attorney in an attempt to disqualify opposing party B's attorney.  "[W]hen an attorney is sought to be disqualified from representing his client because an opposing party desires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client." *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 856 (W. Va. 1991).  *See also Klupt v. Krongard*, 728 A.2d 727, 740 (Md. 1999); *LeaseAmerica Corp. v. Stewart*, 876 P.2d 184, 192 (Kan. App. 1994).

16

offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has firsthand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.

Model R. Prof. Conduct 3.7 cmt. 3. The Model Rule Comments add: "paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party." Model R. Prof. Conduct 3.7 cmt. 4.

¶35 Goheen sought leave to testify concerning the nature of the legal services provided by her office and in support of her position that disqualification would work a substantial hardship for Terance. Although the District Court did not expressly find that Goheen was a necessary witness, it impliedly did so by allowing Goheen to testify but carefully limited the scope of her testimony to subjects discussed above. We conclude that Goheen's testimony was properly taken pursuant to Rule 3.7(a)(2), permitting a lawyer's testimony relating to the nature of legal services rendered. We thus decline to address Terance's argument that Goheen's disqualification would work a hardship to Terance under Rule 3.7(a)(3). We affirm the District Court's actions.[5]

¶36 *4. Did the District Court err by relying on privileged communications between Goheen and Karen?*

¶37 Karen argues that Goheen's office memorandum, Goheen's and Van Note's handwritten notes, and the "Note" that the District Court required Goheen to produce after the hearing, were confidential communications and the District Court's reliance

---

[5] The District Court did note its surprise that Goheen intended to testify without the assistance of counsel and said "I think that's a problem." However, the District Court permitted the testimony and did not comment further on the issue in its order. The issue is not fully analyzed in the briefing, and we decline to address it further.

17

upon them violated the attorney-client privilege, which she did not waive. Karen moved to strike this evidence shortly before the hearing. Terance responds that there was no attorney-client relationship, and, even if so, Karen waived the privilege by filing the motion to disqualify Goheen.

¶38 The attorney-client privilege is one of the professional relationship privileges recognized by the statutory provisions governing evidence:

> (1) An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment.
> (2) A client cannot, except voluntarily, be examined as to any communication made by the client to the client's attorney or the advice given to the client by the attorney in the course of the attorney's professional employment.

Section 26-1-803, MCA (2011). Regarding statutory privileges, Rule 503 of the Montana Rules of Evidence provides that "[a] person upon whom these rules confer a privilege against disclosure waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged." M. R. Evid. 503(a). The attorney-client privilege may be impliedly waived "if a party injects into . . . litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct" or "where a party makes assertions in the litigation or asserts a claim that in fairness requires the examination of the protected communications." *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294 (D. Mont. 1998) (internal quotations and citations omitted). "An implied waiver of the attorney[-]client privilege occurs when (1) the party asserts the

18

privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Dion*, 185 F.R.D. at 295.

¶39    *Dion* involved more typical personal injury and "bad faith" litigation where the insurer sought to exclude communications between it and the attorney expert witness. *Dion*, 185 F.R.D. at 291, 295-96.  The court found that the insurer had waived the privilege by its litigation actions. *Dion*, 185 F.R.D. at 295-96.  Similarly, Karen's actions necessarily waived the evidentiary privilege.  Karen, a former prospective client of Goheen, filed a motion to disqualify Goheen on the basis of the consultations between her and Goheen's office.  As *Dion* noted, "in fairness," Goheen's defense against Karen's claim required examination of the protected communications.  *Dion*, 185 F.R.D. at 294. "The doctrine of waiver by implication reflects the notion that the attorney-client privilege 'was intended as a shield, not a sword.'"  *Dion*, 185 F.R.D. at 295 (citations omitted).  Thus, even if Karen had established that an implied attorney-client relationship existed, Karen's claims that privileged information was being misused and that Goheen should be disqualified put these communications at issue and waived any attorney-client privilege.  Allowing Karen's invocation of the privilege to deny Goheen's use of her office's notes would eliminate "access to information vital" to Goheen's defense to the motion and prevent the court from properly analyzing the claim.  *Dion*, 185 F.R.D. at 295.

¶40 *5. Was Karen denied due process when the District Court relied on documents and sworn testimony not subject to cross examination?*

¶41 Karen contends that her right to due process was denied when the court took under advisement her motion to strike the documents from Goheen's office and did not permit Karen to cross-examine Goheen about the documents. The motion had been filed shortly before the hearing. Terance notes that the District Court also limited the scope of Goheen's and Van Note's testimony pending its decision on the motion to strike.

¶42 However, Karen's brief offers no supporting law or analysis for her state constitutional law claim. Rule 12 of the Montana Rules of Appellate Procedure requires that an argument section of a brief "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on." M. R. App. P. 12(1)(f). This Court has stated it will not consider unsupported issues or arguments and "is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *In re Marriage of Damschen*, 2011 MT 297, ¶ 41, 363 Mont. 19, 265 P.3d 1245 (citing *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 37 n. 8, 329 Mont. 129, 122 P.3d 1220; *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, 53 P.3d 1266). We thus decline to consider this issue further.

¶43 *6. Did the District Court err by determining that Karen abused the rules of disqualification?*

¶44 Karen challenges the District Court's comments that "[d]isqualification rules can be abused by clients. Such is the case at hand," and "the Court is concerned that Karen's

motion to disqualify is, in reality, a tactic designed to delay resolution of this case and force hardship and increased litigation expenses upon Terance." Karen argues that Terance has delayed and raised the cost of this proceeding by choosing Goheen to represent him, and that there is no evidence that Karen manipulated or abused the disqualification rules.

¶45 We have reviewed Karen's claims under the Montana Rules of Professional Conduct at face value and decided them without regard to her personal motives in the litigation. Despite the District Court's comments, we believe it nonetheless likewise properly applied the Rules and reached the correct conclusions. Thus, the comments made regarding Karen's motives had no impact on the outcome of this proceeding.

¶46 Affirmed.

/S/ Jim Rice

We concur:

/S/ Mike McGrath
/S/ Patricia O. Cotter
/S/ Beth Baker
/S/ Brian Morris

21