JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 O.F. Mossberg & Sons, Inc., and Burns Auction & Appraisal, LLC (collectively “Mossberg”), appeal the Order of the Eighteenth Judicial District Court, Gallatin County, granting Luke and Stephanie Keuffers’ motion to disqualify Mossberg’s counsel. The District Court disqualified Mossberg’s out-of-state counsel, Renzulli Law Firm, and its local counsel, Tarlow & Stonecipher, pursuant to Rule 1.20(c) of the Montana Rules of Professional Conduct. The basis for the court’s disqualification order was a prospective client consultation that Luke Keuffer had with an attorney from Tarlow & Stonecipher, which was later used in a deposition of Stephanie Keuffer by John Renzulli of the Renzulli Law Firm. The court found that the continued involvement in the case by Mossberg’s counsel gave the Keuffers reason to question whether their case can proceed fairly and cause to question what they may have disclosed in the consultation to Tarlow & Stonecipher that may later be used against them in the current litigation. The court also found that Mossberg’s counsel’s actions undermine the public’s trust in the legal profession. For the reasons discussed below, we affirm the District Court’s order disqualifying Renzulli and Tarlow & Stonecipher.
ISSUE
¶2 We restate the dispositive issue on appeal as follows:

Whether the District Court abused its discretion in disqualifying Mossberg’s counsel.

*441 PROCEDURAL AND FACTUAL BACKGROUND
¶3 In October 2008, Luke Keuffer (“Luke”) and his wife, Stephanie Keuffer (“Stephanie”), were hunting outside White Sulfur Springs, Montana.[1] Stephanie was hunting with a .308 Mossberg model 800 rifle (“Mossberg rifle”). The Keuffers allege that the Mossberg rifle fell and struck Luke’s rifle and then discharged and shot Luke in the face, causing serious and permanent injury. On August 10, 2010, Luke called Tarlow & Stonecipher, PLLC, and spoke to attorney Margaret Weamer “regarding [Luke’s] possible claim against [a] gun manufacturer for injuries sustained in [a] hunting accident.” Weamer’s time record indicates that she spoke with Luke for six to twelve minutes. After discussing the case with Luke, Weamer advised him that Tarlow & Stonecipher would not be interested in taking the case.
¶4 Luke and Stephanie retained other counsel and, in June 2011, filed a personal injury action against Mossberg. Tarlow & Stonecipher later agreed to represent Mossberg as local counsel against Luke in the litigation. Prior to agreeing to represent Mossberg, Tarlow & Stonecipher ran a conflict check that revealed the phone conversation between Luke and Weamer. Tarlow & Stonecipher determined that the phone conversation did not create a conflict with their representation of Mossberg. The firm disclosed the phone conversation to Mossberg’s national counsel John Renzulli — who appears pro hac vice in this case — but did not disclose the phone conversation to Luke’s counsel.
¶5 The Keuffers’ counsel remained unaware of the telephone conversation between Luke and Weamer until Renzulli deposed Stephanie on June 24-25, 2014. Renzulli began his deposition of Stephanie with an inquiry into other law firms that the Keuffers may have consulted regarding this case. Five questions into the deposition, Renzulli asked Stephanie: “Did anyone from - either you or Luke have any conversations with anybody from Tarlow - T-A-R-L-O-W - Law Firm here in Bozeman?” When Stephanie responded that she did not remember, Renzulli pushed forward, stating: “All right. Let me be very direct .... This was not the first law firm that you talked to, correct, about taking this case?” When Stephanie acknowledged that she had made calls to other law firms before the Keuffers hired their current counsel, Renzulli followed up with the ensuing exchange:
Q. [W]hen you made a couple of calls, did some of the firms say *442 that they weren’t interested in the case?
A. Yeah. I don’t remember who, which firms they were exactly, though.
Q. So you told them the facts, and they weren’t interested?
A. Pretty much, yeah, from what I can remember.
¶6 Following the deposition, the Keuffers filed a motion to disqualify both Tarlow & Stonecipher and the Renzulli Law Firm, LLP, based on the consultation between Luke and Weamer, and Renzulli’s use of the consultation at Stephanie’s deposition. Mossberg opposed the motion and filed two affidavits from Weamer regarding her recollection of the phone conversation with Luke. Mossberg also requested a hearing to resolve the issue.
¶7 The District Court held a hearing on April 10, 2015. During the hearing, the District Court questioned both Weamer and Renzulli. The court specifically questioned Renzulli regarding why he asked Stephanie about contacting other law firms during the deposition. Renzulli responded that he typically asks such questions in these types of cases because he likes “to know if [the plaintiffs are] shopping the case.” Renzulli indicated further that he intended to introduce that information at trial. The District Court permitted Weamer to testify for the limited purpose of addressing the conflict check conducted by Tarlow & Stonecipher. She confirmed that Tarlow & Stonecipher did not disclose the conflict check results to the Keuffers’ counsel.
¶8 Following the hearing, the District Court issued an order granting the Keuffers’ motion to disqualify both Tarlow & Stonecipher and the Renzulli firm. The District Court determined that Mossberg’s counsel violated Rule 1.20(b) and (c). The court found that Renzulli improperly used the Keuffers’ consultation against them during Stephanie’s deposition. The court found that the purpose of Renzulli’s questioning was to intimidate the Keuffers and create an impression they have a bad case. The court indicated the uniqueness of the situation as Renzulli did not use “information learned” from the consultation, but used the fact that the consultation occurred. The court concluded that this was equally a violation of the Rules because Renzulli used the consultation to intimidate and create an adverse inference about the Keuffers’ case. The District Court disqualified Mossberg’s counsel because their actions defeat the purpose of the Rules of Professional Conduct which threatens the public’s trust in the legal system. Mossberg appeals.
STANDARDS OF REVIEW
¶9 A district court possesses broad discretion in ruling on a motion *443 to disqualify counsel. We review a court’s grant of a motion to disqualify for an abuse of discretion. Schuff v. A.T. Klemens & Son, 2000 MT 357, ¶ 26, 303 Mont. 274, 16 P.3d 1002. A district court abuses its discretion when “it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice.” Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 53, 351 Mont. 464, 215 P.3d 649. Application of the Rules of Professional Conduct to a given set of facts is a question of law; “[u]ltimately, it is this Court’s ‘constitutional mandate to fashion and interpret the Rules of Professional Conduct.’ ” Krutzfeldt Ranch, LLC v. Pinnacle Bank, 2012 MT 15, ¶ 15, 363 Mont. 366, 272 P.3d 635 (quoting In re Rules of Prof'l Conduct, 2000 MT 110, ¶ 9, 299 Mont. 321, 2 P.3d 806). As a question of law, the district court’s application of the Rules to disqualify an attorney is reviewed for correctness. In re Marriage of Perry, 2013 MT 6, ¶ 16, 368 Mont. 211, 293 P.2d 170.
DISCUSSION
¶10 Whether the District Court abused its discretion in disqualifying Mossberg’s counsel.
¶11 The Montana Constitution provides that the Montana Supreme Court may “make rules governing ... admission to the bar and the conduct of its members.” Mont. Const. art. VII, sect. 2, cl. 3; See also Harlen v. City of Helena, 208 Mont. 45, 49, 676 P.2d 191, 193 (1984) (concluding the Court possesses exclusive authority to promulgate rules governing the conduct of attorneys); Schuff ¶ 33 (upholding the Court’s authority in all matters involving the conduct of attorneys practicing law in this state); In re Rules of Prof'l Conduct, ¶ 9 (concluding that this Court has a mandate to fashion and interpret the rules); Krutzfeldt, ¶ 15.
¶12 In Schuff, we noted that although a rule violation is not prima facie grounds for disqualification, “a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it.” Schuff, ¶¶ 35-37. There, we concluded:
[T]he gravamen of a motion to disqualify is not that an attorney or firm violated one of the conflict of interest rules under our Rules of Professional Conduct (see, e.g., Rules 1.7, 1.8, 1.9, 1.10, 1.16, M. R. Pro. C.); rather, a motion to disqualify must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court. Evidence *444 demonstrating that an attorney or firm did, in fact, violate a professional conduct rule merely serves as additional weight that may tip the scales in favor of disqualification.
Schuff, ¶ 36.
¶13 The application of the Rules of Professional Conduct in this case turns on how Mossberg’s out-of-state counsel used the information gained from Luke’s prospective client consultation with Mossberg’s local co-counsel and whether that use warranted disqualification. Rule 1.20 governs attorneys in their dealings with prospective clients; it provides:
(a) A person who consults with or has had consultations with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Even when no client-lawyer relationship ensues, a lawyer who has had consultations with a prospective client shall not use or reveal information learned in the consultation(s), except as Rule 1.9 would permit with respect to information of a former client.
(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
(d) Representation is permissible if both the affected client and the prospective client have given informed consent, confirmed in writing, or:
(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the prospective client.
M. R. Pro. C. 1.20.
The dissent interprets Rule 1.20 narrowly and in a compartmentalized manner. For the Rule to have any teeth and be an effective tool for the district courts to utilize in regulating the conduct of attorneys, it must be broadly construed whereby all the sub-sections work together as a whole. There is a logical progression from one subsection to the next which clearly supports a construction of the Rule as a whole. In this *445 case it is evident that the District Court correctly applied the Rule as a whole in making its decision. While we recognize that disqualification is a harsh remedy, under the circumstances of this case we cannot conclude that the District Court abused its discretion in imposing such a remedy.
Rule 1.20(a)
¶14 Neither party disputes that under Rule 1.20(a) Luke became a prospective client to Tarlow & Stonecipher when he called the law firm and discussed his case with Weamer. Because Luke was a prospective client of Tarlow & Stonecipher, certain duties were triggered under the Rule. These duties must be followed by the attorneys that participate in the prospective client relationship.
Rule 1.20(b)
¶15 Under Rule 1.20(b), a prospective client’s conversation is protected and no information gained from the consultation may be used or revealed by the lawyer with whom the client consults. The District Court found that Mossberg’s counsel improperly used the Keuffers’ consultation against them during Stephanie’s deposition. The court indicated the uniqueness of the situation as Mossberg did not use “information learned” from the consultation, but used the fact that the consultation occurred. The court determined that this was equally a violation of the Rule because Mossberg used the consultation to intimidate the Keuffers and cause them to question the merits of their case.
¶16 Mossberg argues on appeal that a conflict occurs not because of the fact of the consultation, but because of the passing of confidential information from the client to the attorney that may be “significantly harmful.” Mossberg asserts no such information was passed and implies that the “use” of information as determined by the District Court is error. We disagree. When the fact of a consultation is used to attack and intimidate a party, such conduct constitutes a violation of Rule 1.20 and will support a motion for sanctions, including disqualification.
¶17 In his deposition of Stephanie, Renzulli questioned her about Luke’s consultation with Tarlow & Stonecipher. Renzulli’s line of questioning was not idle chit-chat about whether Stephanie was generally familiar with Bozeman law firms and Tarlow & Stonecipher in particular. He began the deposition by questioning her about law firms either she or her husband had contacted about this case. He then asked her point blank whether one of those firms was Tarlow & Stonecipher. Renzulli pressed on by asking, “[s]o you told them the *446 facts, and they weren’t interested.” Pertaining to Luke’s consultation with Tarlow & Stonecipher, the record is clear that before he started his deposition of Stephanie, Renzulli knew that Luke had talked to Weamer, provided her with facts about his case, and been told that her firm was not interested. Thus, Renzulli used information learned in the consultation in violation of Rule 1.20(b).
¶18 Rule 1.20(b) does not require that an attorney use a verbatim transcript of the information obtained during a prospective client consultation in order for it to constitute a violation of the rule. Nor does Rule 1.20(b) require that the information used or revealed be “significantly harmful,” as would be required to form the basis for disqualification under Rule 1.20(c). Rule 1.20(b) places an absolute prohibition against using or revealing any information learned in the consultation. It should be clarified that the mere use of information learned in a prospective client consultation, if inadvertent or harmless, may not by itself form the basis for disqualification. In this case, however, Renzulli consciously used the information learned in Luke’s consultation with Tarlow & Stonecipher for tactical litigation purposes. Specifically, the District Court found:
[T]he purpose of Renzulli’s questioning regarding the fact that Plaintiffs consulted with Tarlow & Stonecipher was to intimidate Plaintiffs and to create an impression that Plaintiffs have a bad case - so bad that Tarlow & Stonecipher, having heard the facts, decided to represent the Defendants instead of Plaintiffs. Using the consultation in this manner gives Plaintiffs reason to question whether their case can proceed fairly. It also gives Plaintiffs cause to question what they may have disclosed to Tarlow & Stonecipher that may later be used against them. While Plaintiffs claim they cannot remember what they told Tarlow & Stonecipher, they believe they told all attorneys they consulted with the same information and some of that information is harmful to them.
The District Court also found that Renzulli’s conduct undermined the public’s trust in the legal profession.
¶19 In Schuff, we noted that although a rule violation is not prima facie grounds for disqualification, “a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it.” Schuff, ¶¶ 35, 37. We concluded:
[A] motion to disqualify must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court. Evidence demonstrating that an *447 attorney or firm did, in fact, violate a professional conduct rule merely serves as additional weight that may tip the scales in favor of disqualification.
Schuff, ¶ 36.
¶20 After finding that Renzulli’s questioning was designed to intimidate the Keuffers and to create an impression that they had a bad case; that it caused the Keuffers to question whether their case can proceed fairly and whether they may have disclosed to Tarlow & Stonecipher information that may later be used against them; and that Renzulli’s conduct undermined the public’s trust in the legal profession, the District Court concluded that disqualification was appropriate. We do not find that this ruling constituted an abuse of the broad discretion the district court possesses when ruling on a motion to disqualify. Schuff, ¶ 26. Although the District Court did not use the precise words “prejudice or adversely impact the rights of another party,” it does not take the Rosetta Stone to decipher the District Court’s assessment of Renzulli’s conduct. We therefore affirm the District Court’s Order disqualifying Renzulli.
¶21 Mossberg argues the District Court wrongfully imputed the conflict to Tarlow & Stonecipher. The District Court determined that “while Tarlow & Stonecipher did not find it necessary to disclose Weamer’s consultation with Luke to Plaintiffs’ counsel, they did find it to have sufficient pertinence to inform Renzulli....” The court also determined that because the information came from Tarlow & Stonecipher, it gives the Keuffers reason to question what they may have disclosed to Tarlow & Stonecipher that might later be used against them. Based on these findings, the court imputed Renzulli’s conduct to Tarlow & Stonecipher. Tarlow & Stonecipher are implicated with Renzulli because, after becoming local co-counsel for Mossberg, they communicated the substance of the phone call and thereafter participated in the development and prosecution of the case. The continued participation of Tarlow & Stonecipher in this case would undermine the remedy imposed on Renzulli. Thus, we affirm the District Court’s Order disqualifying Tarlow & Stonecipher.
¶22 The District Court’s disqualification of Renzulli and Tarlow & Stonecipher was not an abuse of discretion. Although the District Court based its ruling on Rule 1.20(c), we conclude the disqualification was proper because of the violation of Rule 1.20(b) and the prejudice to the Keuffers resulting from the violation. It is well-established that a district court’s ruling may be sustained under the “wrong-reason, right-result” appellate rule. Tipp v. Skjelset, 1998 MT 263, ¶ 16, 291 Mont. 288, 967 P.2d 787. The District Court incorrectly relied on Rule 1.20(c) *448 as the basis for disqualifying defense counsel; however, it correctly concluded that Renzulli’s conduct warranted disqualification of Renzulli as well as Tarlow & Stonecipher.
CONCLUSION
¶23 We conclude that defense counsel improperly used information obtained from the prospective client meeting with Luke, causing prejudice to the Keuffers and leading them to question the merits of their case. For this and the additional reasons set forth above, the District Court’s Order disqualifying defense counsel is affirmed.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and RICE concur.

 Stephanie and Luke have since divorced and she is now Stephanie Peer. The parties and the District Court refer to her as “Stephanie Keuffer” and we will do the same.